THE McCALL COMPANY, a Corporation, Appellant, v. C. P. JENNINGS, J. H. F. LAST, and J. H. THOMAS, Co-partners, Doing Business under the Firm Name of JENNINGS, LAST & THOMAS, Respondents and Cross-Appellants.

No. 1456.   (73 Pac. 639.)

1. **Appeal: Objection Not Made Below.**
Defendant can not on appeal insist that there was a variance, in that the complaint was for the purchase price while the proof was for damages for breach of contract, he not having raised the question below, but there insisted, against plaintiff's objections, on trying the case on the theory that the action was for breach of contract.[1]

2. **Executory Contract: Rescission: Liability.**
The purchaser under a contract of sale of articles to be delivered from time to time may terminate the contract, and direct discontinuance of further delivery, and be liable only for the difference between the purchase price and the market value of the articles which would thereafter have been delivered.

3. **Same: Instructions: Must be Within Issues.**
In an action for balance of purchase price, in which evidence to prove damages for breach of contract by defendant was not admissible, and was not introduced, the giving of instructions as to damages for breach of an executory contract is error, though they contain a correct statement of the law.

4. **Same: Parol Evidence Varying Contract: Inadmissible.**
Oral statements and promises made by plaintiff to defendant just prior to the signing of the contract sued on, tending to vary its terms, are not admissible.

(Decided September 12, 1903.)

Appeal from the Second District Court, Weber County. —*Hon. C. H. Hart,* Judge.

---

[1] Lebcher v. Lambert, 23 Utah 1, 63 Pac. 628.

Action on contract. From a judgment in favor of the plaintiff, both parties appealed.

REVERSED.

*Valentine Gideon, Esq.*, for appellant.

If it be admitted that the letters written by the defendants constituted a breach on their part, the plaintiff had an election of three remedies: "The one who has been injured has an election to pursue any one of three remedies. He may treat the contract as rescinded and recover upon *quantum meruit* so far as he has performed; or he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, at the same time giving the other party an opportunity to reconsider and comply, and at the end of the time specified in the contract for performance, sue and recover under the contract; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing." Dustan v. McAndrew, 44 N. Y. 78; Bridgeport v. Crocker, 60 N. Y. 627; Hunter v. Wetsell, 84 N. Y. 539; Bagley v. Finley, 82 Ill. 524; 72 N. Y. 599; Quick v. Wheeler, 78 N. Y. 300; Heyden v. Demets, 53 N. Y. 424. See also McCormick Harvesting & Machine Co. v. Markert, 78 N. W. 33, and Schwarzer v. Karsch Brewing Co., 74 N. Y. 383.

The general rule is that isolated transactions, commercial or otherwise, taking place between foreign corporations and a citizen of this State, do not constitute doing or carrying on business by the foreign corporation within this State, but that the prohibition contained in the Constitution and in the statutes are against the acts of foreign corporations engaging in or carrying on their ordinary business herein. In Dearborn Foundry Company v. Augustine et al., 31 Pac. 327, a case decided by the Supreme Court of Washington and

under a statute very similar to our own, it was held that a contract made with a foreign corporation which had not complied with the statutes was not void in the absence of a statute so declaring. To the same effect is Rockford Insurance Co. v. Rogers et al., 47 Pac. 848; Fairbanks, Morse & Co. v. Macleod et al., 45 Pac. 282.

Nowhere in our statutes is the right to maintain an action at law in the courts of this State denied to a corporation not having complied with the requirements of our statutes. Power River Cattle Co. v. Custer Co., 22 Pac. 383; Kindel v. Beck & Pauli Lithographing Co., 35 Pac. 538; Singer Manufacturing Co. v. Hardee et al., 16 Pac. 605; Savage v. Atlanta Home Insurance Co., 55 App. Div. (N. Y.) 20; American Broom & Brush Co. v. Addickes, 19 Misc. (N. Y.) 36; 113 U. S. 727-733; 64 App. Div. (N. Y.) 138; 5 App. Div. (N. Y.) 559.

*Messrs. Hulaniski & Peery* for respondents and cross-appellants.

### STATEMENT OF FACTS.

The complaint in this case in substance alleges that on or about the 2d day of May, 1899, at Ogden City, Utah, defendants entered into a certain contract with plaintiff. The contract, in so far as material here, reads as follows: "Ogden, Utah, May 2, 1899. The McCall Company, New York: Please deliver to the Merchants' Dispatch (transportation company) care of the Chicago & Northwestern Railway and Union Pacific Railway Company, at New York, addressed to us a stock of the McCall Bazar Patterns at the uniform price of $7\frac{1}{2}$ cents for each pattern (excepting those retailed for 10 cents, the price of which is five cents each) amounting to $200, including September issue, $100 payable thirty days after shipment, and the remainder $100 is to remain on consignment during the term of this agreement, and is not payable until this contract is closed at which time the patterns remaining of said stock may be re-

turned by us, and only balance due you on account of such consigned stock will be paid by us.    [Then follows an extended description and price list of the patterns, magazine fashion sheets, etc.]    All goods ordered for delivery after the first stock are to be paid for on or before the fifth day of the month succeeding date of shipment.    The terms of this contract are to remain in force for two years from date and thereafter until the expiration of sixty days' notice given by either party in writing.    The McCall Company guarantees that if, at the end of two years from date, the result of the business showed a loss in the sale of patterns—that is, if we have paid them more money for patterns than we have received for patterns—they will, upon demand made by us and receipt of the patterns within thirty days after the expiration of such two years, pay us such loss in cash, provided all the terms of this contract have been fully complied with.''    The complaint further alleges that in accordance with the contract, and under the terms thereof, plaintiff delivered to said defendants the goods as therein provided in the sum of $624.51; that interest has accumulated on the account since it became due in the sum of $18.70. The answer denies the material allegations of the complaint relied upon for a recovery, and alleges a breach of the contract on the part of plaintiff.    The record shows that soon after the execution of the contract plaintiff commenced and continued to make shipments to defendants of the patterns, publications, and pattern sheets mentioned in the contract, and defendants received and paid for them in accordance with the terms of the contract until April 2, 1900, on whch date defendants wrote plaintiff as follows:    ''We ship you to-day by freight the balance of the consigned portion of our stock which belongs to you amounting to $85.17 net.    We also wish to notify you of our desire to terminate our contract with you, and you will please consider this our closing notce.    Don't ship us any more goods of any kind.''    Defendants about this time

returned to plaintiff the goods they had on hand, which they had received and paid for under the contract, amounting to $210. In answer to the foregoing letter, plaintiff wrote defendants as follows: "We are in receipt of your letter of the 2d inst. notifying us of your intention to break your contract with us dated May 2, 1899. Under the circumstances we feel bound to notify you of our intention to hold you to your full liability for such breach of contract. Your letter contains the following: 'Don't ship us any more goods of any kind.' We have already shipped to you the usual May issues, which may, possibly, not have reached you. We shall hold you liable therefor, and shall continue to ship the goods called for by our contract." After the foregoing letters were written, there was some further correspondence between the parties, in which the defendants repeated their former notices for the plaintiff not to ship any more goods. Notwithstanding these repeated notices forbidding plaintiff to ship any more goods, and the return of the goods defendants had received and paid for, plaintiff continued for more than a year thereafter to make monthly shipments, aggregating in value $557.40 ( the contract or purchase price). Defendants in the meantime refused to accept the goods shipped, or take them from the express office or freight depot to which they were consigned. The issues were tried by a jury, who returned a verdict in favor of plaintiff for $250. Both parties appeal.

McCARTY, J.—after stating the facts, delivered the opinion of the court.

Counsel for defendants (cross-appellants) contend that plaintiff, under the facts as disclosed by the record, is not entitled to recover the purchase or contract price of the goods, and that its only remedy is by an action for damages for breach of contract. That is, if we understand counsel's position, which is not clearly defined, the case should be reversed, for the reason that the facts proved make out a different case

from the one alleged in the complaint; in other words, that there is a fatal variance between the pleadings and proof. Defendants did not raise this question in the court below. In fact they insisted, in the face of repeated objections made by plaintiff, on trying the case on the theory that the action is for a breach of contract, and not for the purchase price of goods sold and delivered under the contract. Having taken this position in the trial court, they can not now be permitted to change or shift it, and in this court for the first time be heard to complain that the case made out is different from the one alleged. Lebcher v. Lambert, 23 Utah 1, 63 Pac. 628; Wasatch Mining Co. v. Crescent Mining Co., 148 U. S. 293, 13 Sup. Ct. 600, 37 L. Ed. 454.

There are other errors alleged by cross-appellants, but as they are entirely without merit, it is unnecessary to review or discuss them.

The written notices mailed to plaintiff by defendants, forbidding plaintiff to ship any more goods, and the testimony of defendants' refusal to receive the same, were admitted over plaintiff's objections.

The action of the court in overruling the objections to this kind of evidence is now assigned as error. Defendants were entitled to this evidence, and it was not error to admit it, as it was material for the purpose of showing a rescission of the contract by defendants, which, if established, would prevent a recovery by plaintiff of the purchase price of all goods shipped after such rescission. The rule is well settled by the weight of authority that a party to an executory contract, such as the one under consideration, may, by his own act, break and terminate it; but by doing so he will be liable to the other party to the contract for all damages resulting from such breach. The measure of damages in such case is the difference between the price agreed upon and the market value of the goods contracted for. Mr. Bishop, in his work on Contracts (section 837), states the rule as follows: "And the proposition is sound in principle and sufficiently supported by authority, though

more or less may be found in the books against it, that one party alone, with no consent from the other, who is in no fault, has, at law, the power—not to be exercised without liability for damages, but still the power—to rescind an executory contract. If this were not so, one might be ruined by an undertaking the carrying out of which a change in circumstances rendered highly inexpedient or practically impossible.'' And again the same author says (section 841): ''A party who receives from the other a notice of rescission is, while entitled to damages should it proceed from the other's mere pleasure or necessities, still not justifiable in allowing anything further to be done to bring needless expense. He is even to take affirmative action if the interests growing out of the rescinded contract require.'' And, continuing, he declares (section 842): ''At law a party who has broken his agreement will be liable to the other to the extent of what has been suffered, and no more.'' Unexcelled Fireworks Co. v. Polites, 130 Pa. 536, 18 Atl. 1058, 17 Am. St. Rep. 788; Davis v. Bronson, 2 N. D. 300, 50 N. W. 836, 16 L. R. A. 655, 33 Am. St. Rep. 783, and note; American Bridge & Contract Co. v. Bullen Bridge Co., 29 Or. 549, 46 Pac. 138; Lawrence Canning Co. v. H. D. Lee Merc. Co., 5 Kan. App. 77, 48 Pac. 749.

The court instructed the jury as follows: ''(4) In an action for breach of an executory contract (that is, a contract where there has been no delivery, or title has not passed) to purchase personal property, in the absence of fraud or stipulation to the contrary, the rule of damages is actual compensation; the injured party may recover his loss sustained. In such case the damage is the difference between the contract price and the market price at the time and place of delivery. (4a) It is the duty of the plaintiff to keep down and not enhance the damages. After notice from the defendants not to ship any more goods, the plaintiff is not entitled to keep on manufacturing the goods, and compel the defendants to pay freight and the costs of

manufacture. (4b) If you find that plaintiff offered to deliver the goods and wares in accordance with the written contract order, and that defendants refused to accept the same through no fault of the plaintiff, then plaintiff can recover as damages the difference between the contract price and the market value of such goods at such time, together with interest thereon." To these instructions the plaintiff duly excepted, and now assigns the giving of them as error. This is an action for debt—the purchase price for goods sold and delivered. Under the pleadings as they are now framed, the plaintiff can only recover the balance due, if any, of the purchase price of the merchandise sold and delivered under the contract. No evidence was introduced to prove damages for breach of contract. In fact, under the pleadings as they now exist, evidence of this character would be inadmissible. Therefore the instructions of the court, while they contain a correct statement of the law in the abstract, are inapplicable when applied to the issues made by the pleadings in this case, and the giving of them was error.

The court, over plaintiff's objections, admitted evidence of certain oral statements and promises made by plaintiff's agent to defendants just prior to and about the time the contract under consideration was signed, which statements tended to vary the terms of the instrument. The admission of this testimony was error. 1 Greenl., Ev., sec. 275.

The case is reversed, with directions to the trial court to grant a new trial, and permit the parties, if they so desire, to amend their pleadings; the costs of this appeal to be taxed against defendants (cross-appellants)..

BASKIN, C. J., and BARTCH, J., concur.