## PASSEY v. BUDGE.

No. 5444.   Decided December 7, 1934.   (38 P. [2d] 712.)
Rehearing Denied, January 7, 1935.

*Leon Fonnesbeck,* of Logan, for appellant.

*Budge, Parker & Romney,* of Salt Lake City, for respondent.

MOFFAT, Justice.

This is an action for malpractice in which plaintiff claims both actual and punitive damages. The plaintiff and appellant in her complaint alleges that on or about the 13th day of May, 1925, the defendant and respondent, a practicing physician, induced the plaintiff to submit to an operation for removal of her tonsils; that the defendant (the parties will be referred to as plaintiff and defendant) performed the operation on plaintiff, as his patient, in a negligent and unskillful manner; that the negligent and unskillful acts and conduct of the defendant consisted of the following:

The turning and twisting of a Sluder La Force tonsilotome instrument in such manner that he caused the cutting blade of the instrument to break, and allowed the broken piece of the steel blade to fall or drop into plaintiff's throat, and failed to remove the broken piece of steel, which was a thin piece of steel, triangular in shape, about five-eighths of an inch on each side, and sharp pointed at each angle. That defendant failed to have an X-ray picture taken of plaintiff's throat while the broken blade was lodged therein. That defendant gouged, forced, and pried other instruments

down plaintiff's throat in an effort, as plaintiff believed, to recover and remove the broken piece of steel blade from plaintiff's throat, which caused her great pain and suffering; that defendant allowed the broken piece of steel blade to pass into her esophagus and there to remain. That plaintiff was unaware of the fact that the broken piece of steel blade had passed down her throat and into her body; that from the time of the tonsillectomy plaintiff suffered constant pain and distress until the removal of the piece of broken steel blade from her body on or about the 6th day of January, 1932. That during the intervening years and until July 17, 1930, plaintiff went to defendant as her physician for relief and treatment.

That during all such time the defendant failed to advise plaintiff that said piece of steel blade had passed down her throat and into her body or to prescribe for its removal. That during all of such time the defendant was aware that the cause of plaintiff's distress was the presence of the broken piece of steel blade in her body and knowing also that plaintiff was ignorant of such fact. That plaintiff has been sick and incapacitated to do her work, and at times has been confined to her bed and has also suffered great mental distress. That on or about the 6th day of January, 1932, she was compelled to and did undergo an operation for the removal of said broken piece of steel blade from her body. That the relation of patient and physician had continued for many years, including the period from before the tonsillectomy, until July, 1930, at which time he recommended her to Dr. S. M. Budge for examination and attention.

That the plaintiff was ignorant of the fact that the broken piece of steel blade was in her body or that its presence there was the cause of her pain, suffering, and distress, and that her ignorance in that regard was due to defendant's neglect and refusal to inform or advise her to have said broken steel blade removed from her body. That she first learned and discovered that the said broken steel blade was in her body immediately prior to January 6, 1932, at which time it had worked down through her stomach, intestines,

and other parts of her body to a point where she discovered it herself. That she was induced to submit to the said tonsillectomy upon the promise and assurance that he would remove her tonsils without mishap injury, or ill aftereffects; and that she had confidence in defendant and believed and relied upon his assurances. That the defendant knew that said piece of broken steel blade was in plaintiff's body, and fraudulently misled and deceived her and withheld from her the facts; and that defendant is estopped from raising the bar of the statute of limitations as a defense to the action.

To the complaint the defendant filed answer, and admits that on or about the 13th day of May, 1925, he performed an operation on plaintiff for the removal of her tonsils, and that he used suitable instruments. Each and every other allegation of the complaint is either, for want of sufficient information or specifically, denied or by affirmative traversing allegations put in issue. In addition thereto, as an affirmative defense, the defendant alleges the cause of action to be barred by the provisions of Comp. Laws Utah 1917, §§ 6467 and 6474, now R. S. Utah 1933, 104-2-23 and 104-2-30.

The cause was tried to the court sitting with a jury. Upon the conclusion of the testimony on the part of both plaintiff and defendant, and after both parties had rested the case, the defendant interposed a motion, specifying a number of grounds, and to the effect that the court direct the jury to return a verdict in favor of the defendant and against the plaintiff, "no cause of action." The motion was granted. A verdict was rendered accordingly and judgment entered thereon. The plaintiff appeals.

Plaintiff specifies a number of errors, only two of which were argued, which two include all the points raised in defendant's motion for the directed verdict and all the assignments of error argued. They are: That the court erred in granting the motion on both of the grounds specified, viz., that it was error to hold that the cause of action was barred by the statute of limitations pleaded and also upon the ground that there was insufficient evidence to justify the

submission of the cause to the jury upon the facts. If the court was correct upon either of the situations presented, the judgment must be affirmed.

Giving plaintiff's evidence every favorable construction, it may be said to establish that on or about the 13th day of May, 1925, plaintiff underwent an operation for the removal of her tonsils. The defendant was then, and for some years had been, her family doctor. Plaintiff's husband was shown a surgical instrument referred to and by the witness called a "Sluder LaForce Tonsillotome." When shown the instrument, he said: "Well, it was like this, as near as I can tell. It was one just like this. I think that this is either the one or one just like it"; that it might have been a different instrument entirely, but that it looked like that one; that he saw an instrument just like it on the operating table; that, while the doctor was removing the first tonsil, he heard him say: "Oh! pshaw, I have broken the blade. Get me another, we shouldn't have broken it; it is made of the best of steel"; that the doctor did not use another instrument to remove the other tonsil.

Plaintiff testified that the instrument used by the doctor was similar to the one exhibited to her (the same instrument that had been shown to her husband); that while the doctor was removing the first tonsil she heard the doctor say: "Oh! pshaw, the blade broke, it shouldn't have broken; it is made of the best of steel; get me another." Plaintiff also testified that the doctor removed the second tonsil with the same instrument; that the doctor proceeded to swab and pick into plaintiff's throat with long instruments; and that, when asked by plaintiff what he was trying to do, he stated that he was trying to clip some cords down in her throat; that plaintiff was taken to her home the next day after the operation; that for about three weeks she suffered much pain and was unable to swallow any food and very little liquid; that from the time of the tonsil operation plaintiff was more or less in constant pain until the 6th day of January, 1932, when there was removed from her rectum a three-cornered piece of steel, to which, upon removal, she

attributed the pain and suffering she had endured since the operation. Plaintiff's husband, who observed the operation for the removal of the piece of steel testified that it was removed from the rectum. Dr. Ezra C. Rich, Dr. Clarence Snow, and Dr. E. F. Root testified that the piece of steel, beyond doubt, was located in the perineal tissue; that it did not go through the alimentary tract; that, if it had gone through the lower bowel and passed the sphincter muscle, the piece of steel would have been expelled, and could not have cut its way through the lower bowel and into the perineum from which the operating surgeon testified he removed it without infecting the perineum and producing a painful abscess.

Plaintiff testified she did not know of the presence in her body of the piece of steel until its removal. Upon the removal, she then thought of the tonsil operation, and attributed the broken blade of steel to be a part of the tonsillotome, and her suffering to its presence in her body. Plaintiff visited the defendant upon occasion for treatment up to July, 1930. At no time, however, was there any question about the tonsil operation as such. Upon one occasion she was advised she had laryngitis. Apparently the bowel pains complained about were at no time attributed to the presence of the piece of steel until after its removal in January, 1932.

As to any injurious effect resulting from the tonsillectomy itself, there is neither allegation, except as to the manner of using the instrument, nor proof of anything unskillful or negligent or showing a want of due care or that it was performed otherwise than in accordance with the standard practice required in such cases. Nor was there any testimony offered except by the plaintiff herself as to the operative procedure or manner of performance of the operation, which all seem to concede, in so far as the tonsil removal was concerned, was properly done. Nor was there any expert testimony offered by plaintiff as to the manner or character or standards relating to the operation for removal of the tonsils of plaintiff.

The claimed injury is associated with the operation for

removal of plaintiff's tonsils and that during the operation the instrument was broken, and that the broken piece was by the defendant negligently and carelessly permitted to drop into plaintiff's throat and permitted to pass into the esophagus and thence through the alimentary or digestive tract.

As appears from her testimony, plaintiff herself did not know that the broken blade of steel was in her body until about seven and one-half years after the tonsil operation. Plaintiff does not, nor do any of her witnesses, testify that the defendant knew that a piece of steel dropped into plaintiff's throat at the time of the operation, or at any time. It was testified by plaintiff that the instrument used by defendant was similar or like the exhibit presented to her at the time of the trial. At no time was either the actual instrument alleged to have been used or any broken part thereof produced; but a broken piece of what is said to be a part of a blade of a similar instrument was produced. It is argued that the piece of broken steel blade is a part of a Sluder LaForce tonsillotome. This is sought to be established by a comparison of the broken piece with an instrument testified as being similar. Whatever probative value may be given to the comparison may be said to be a question of fact; but as against that there is the testimony of the defendant that he never owned or used such an instrument, and in this he is corroborated by two other witnesses that no such instrument was used in the operation, and, further, an additional witness who was familiar with and had used a Sluder La Force tonsillotome as well as a salesman who had been selling such and other instruments for thirteen years testified that the broken piece taken from plaintiff's body was not a piece of a broken blade from a Sluder La Force instrument. So that the first fact to be established by plaintiff, though not controlling, and to establish which she has the burden of proof is: Did the defendant use a Sluder La Force tonsillotome? The record on that question establishes a preponderance of the evidence in favor of defendant. Whether the burden of proof required to be sustained by a

plaintiff is the same thing as a prima facie case, or whether only sufficient is required to enable a jury to say sufficient has been presented to move the scale one way or another as to the weight of the evidence and thus the matter is one for the jury to determine such preponderance of the evidence, we need not here determine. Let it be conceded for the argument that such matter was sufficiently presented that the question of what kind of instrument was used was a question for the jury, and let it be further conceded for the argument that a Sluder La Force tonsillotome was used. How, then, stands the case? The only evidence of the use of the instrument is the alleged statement of the defendant, while removing the first or right tonsil, that he had broken the blade and that it should not have broken and to get him another instrument.

This evidence seems to be completely neutralized by the further evidence of plaintiff that the second or left tonsil was removed with the same instrument, which would be an impossibility if the broken blade was a part of the instrument used, unless another blade was provided and by a process of dismantling the instrument inserted in the place of the alleged broken blade, and there is no proof of such having been done. However, should it be further conceded that the instrument was broken, in what manner was it broken? Evidently, if it was broken as the plaintiff contends as shown by the piece of steel produced from her body, no further use of the instrument could be made; but, even further, there is not a word of evidence about the manner of breaking or the effect of such an accident or the character of the broken piece of blade, nor is there a word of evidence about what became of it, except the inference from a later discovery of a piece of steel in a remote part of plaintiff's body. At no time did plaintiff suggest to the defendant that it might be possible that a broken piece of the instrument he had used had passed into her body, nor did she question him about such matter. She testified that it did not occur to her that such could possibly be the case until after the removal of the piece about seven and one-half years later.

If it be assumed that the instrument was broken as plaintiff would infer and further assumed that such piece of steel did pass into the esophagus as plaintiff's theory of the case would require to be found by associating the pain plaintiff testified to having suffered with the ■ broken steel blade, what treatment, if any, was required? Had the defendant actually known, and there is no evidence that he did know, of the alleged piece of steel passing into plaintiff's throat during the operation, could it be said that permitting such a piece of steel to so drop into plaintiff's throat was other than an accident, and that the permitting of it to pass on through the alimentary tract was negligence? Plaintiff produced no expert testimony on this matter. Four reputable physicians testified that such an object would pass through the body by the ordinary processes without injury or pain. Numerous instances of articles having passed through the digestive tract were given. While this opinion is being written, there is a local case reported by the newspapers of a child having swallowed an open safety pin, and its daily progress is being watched by means of X-ray pictures or fluoroscope observations, similar to an illustrative picture presented in the instant case. Surprising as it may seem to those not otherwise advised, the evidence shows that no pain is induced by the passage of such objects through the alimentary tract. One of the physicians testified as follows:

"Q. What particular foreign bodies have you known to enter and pass through the intestinal tract? A. You can mention most anything in existence.

"Q. Well, hard or metallic substances or sharp substances particularly? A. The more common ones are safety pins and tacks.

"Q. Closed safety pins? A. Well, both closed and open. * * *

"Q. What about foreign bodies, doctor, in the stomach; do you mean to testify that they don't agitate or irritate the stomach or cause any damage there? A. I don't believe I so stated.

"Q. What would be the effect if you had foreign body or object such as 'Exhibit J' lodged in the body with these sharp corners on— lodged in the stomach? A. 'Exhibit J' was the piece of metal I was shown?

"Q. Yes. A. I don't think there would be any effect at all.

"Q. You think that wouldn't cause any irritation in the stomach at all? A. I think it very unlikely it would cause any irritation.

"Q. Why do you say that doctor? A. Because so many things of that kind are swallowed and pass through the stomach without causing any trouble.

"Q. You say that you had experience once with the neck of a vanilla bottle passing through a person? A. Yes, sir.

"Q. Was that your own case doctor? A. Yes, sir."

The medical doctors testified that, if Exhibit J (the triangular piece of steel) had caused any pain, it could only have been by lodgment in the esophagus, and that, if it were lodged there so that it cut the esophagus, the plaintiff would have died. Appellant at no time after leaving the hospital complained of pains in her chest, and such pains as she had in her throat the doctors said were the expected result of the tonsil operation. Except for the visit three weeks after the tonsil operation at which time the defendant after inspection announced that in the tonsil operation "he had done a good job" the plaintiff did not again visit defendant until more than six months had elapsed. All the testimony is to the effect that neither the plaintiff nor the defendant knew anything about the presence of the metal in plaintiff's body until its removal a short time before the bringing of this action. In the light of this testimony, it is difficult to discover any proof of negligence on the part of the defendant.

It is argued by plaintiff that the defendant "is equitably estopped from pleading the statute of limitations as a bar to plaintiff's action," and points to plaintiff's allegations: "That the defendant, with intent to deceive the plaintiff and to induce her to refrain from bringing an action against him for his said negligence and malpractice of which he well knew he was guilty, fraudulently concealed from plaintiff the facts as to his negligence, or the fact that the said broken steel blade was in her body and was the cause of her distress and suffering," etc.

It must be remembered that the statute of limitations is a legal, and not an equitable, defense. It is available, regard-

less of the equities, if the facts are such as to warrant the interposition of the plea. The statute of limitations may have its basic principles founded upon equitable considerations, and one may by a course of conduct so demean himself as to toll the running of the statute. Had plaintiff been able to prove the allegations of fraud, concealment, false promises, or misrepresentations, claimed to have prevented her discovery of the facts constituting her alleged cause of action, the time when the running of the statute began might present other aspects for consideration. So far as the record discloses, there was no fraudulent concealment, no false promises or misrepresentations. Not only does the defendant deny any knowledge of the broken steel blade being in the plaintiff's body, but presents such evidence as, if believed, would preclude not only the possibility of knowledge but likewise make impossible the alleged manner of its getting there.

The case of *Peteler* v. *Robinson,* 81 Utah 535, 17 P. (2d) 244, 247, is cited by plaintiff as conclusive upon the question of the statute of limitations. We think the principle of law laid down in that case is correct. It is not applicable upon the facts to the instant case. The differences are such as to distinguish the cases. The allegation in that case was: That the purpose of each and all of plaintiff's visits since the tonsil operation "was that defendant might endeavor, and have an opportunity to repair and lessen the evil effects of his said careless blunder in removing plaintiff's tonsils." It must be remembered also that the *Peteler* v. *Robinson Case,* supra, went off on demurrer, and the comparison of the allegations in that case with the evidence in the instant case is sufficient to mark the outstanding differences. Without further reference to the evidence in the instant case, the court in the *Peteler* v. *Robinson Case,* in relation to plaintiff's contention, there said:

"It is contended by the plaintiff that the defendant in January, 1919, undertook to treat the plaintiff for a throat condition, and while, as alleged, he negligently and unskillfully diagnosed the condition of the throat, and negligently and unskillfully removed her ton-

sils, he thereafter continued to treat such condition almost daily until December, 1920, and July, 1921, when he negligently and unskillfully performed other operations on her ears which became infected through the septic condition caused by the operation on the tonsils, and thereafter almost daily continued to treat the plaintiff in a negligent and unskillful manner for such septic and infected condition of the throat until October, 1926, when he ceased to prescribe or act for the plaintiff, during all of which time she was his patient for treatment, and that the defendant's treatment from the beginning to the end was a continuous negligent and unskillful treatment resulting in the injuries complained of, a permanent injury to the throat, a destruction of the vocal cords, and a diseased condition of the heart and of plaintiff's nervous system; and that hence plaintiff's cause of action against the defendant did not accrue until she in October, 1926, ceased to be the defendant's patient and the defendant ceased to treat or prescribe or act for her in the treatment of her throat conditions which he had undertaken to treat with ordinary care and skill, but negligently and unskillfully failed to do so."

Then, following the discussion of cited cases, the court says:

"In view of the alleged facts of not only a negligent and unskillful operation of plaintiff's throat, but also of an alleged continuing negligent and unskillful treatment of the septic and infected condition of the throat, and of an alleged continued treatment of the throat by the defendant until about four months prior to the commencement of the action, we think the cited cases of the defendant, in the main, do not apply to the extent contended for by the defendant, and that the case in hand is unlike a case where an operation was performed and where the action was not commenced within the statutory period after the last treatment was rendered and where the only negligence alleged was the negligence in the performance of the operation, though the consequential damages were not ascertained within the statutory period."

In the instant case, had there been, after the operation removing the tonsils, continued treatment of plaintiff's throat conditions in a negligent and unskillful manner, the very ailment the defendant undertook to treat, the doctrine of the *Peteler* v. *Robinson Case* would be applicable. The allegations of the complaint in the Peteler Case are quite analogous to the allegations herein, except the allegations

herein refer, not to the operation, but to the metal alleged to have been in plaintiff's body. There is no proof that defendant undertook any treatment in any way connected with or referable to the piece of metal. The operation by a clinical member associated with defendant, some seven and one-half years later, is the first association of the injuries with the broken blade of the tonsillotome.

Plaintiff has cited a number of cases where foreign objects such as broken needles, pieces of gauze, cotton, or sponges have been left in the body by operating surgeons. Knowledge of such objects being left is either admitted or imputed to the physician in such cases. The case of *Benson* v. *Dean*, 232 N. Y. 52, 133 N. E. 125, 126, is in its analogy applicable. The plaintiff had been suffering from a rectal trouble. He consulted a physician, who obtained assistance of a specialist in general surgery. While sewing up one of the incisions, a needle broke. The plaintiff was not taking the anesthetic well. Probing for the broken needle failed to discover it. After a time an operation to remove the broken needle became necessary. Suit was brought.

"Plaintiff sought to establish his case without the aid of medical experts. His theory seems to have been that the lack of skill or want of care was so obvious from the history of the case that expert testimony was unnecessary; that the loss of a portion of the needle in an operation, coupled with a bad result, standing alone, is evidence of unskillful surgery. Ordinarily, jurors would find difficulty, without the help of medical evidence, in determining the right of a patient to recover against his physician for malpractice based on lack of scientific skill, but the results may be of such a character as to warrant the inference of want of care from the testimony of laymen, or in the light of the knowledge and experience of the jurors themselves."

After some discussion of the facts of the case, the court then further said:

"A question of proper skill and care was thus presented for the consideration of the jury, and the judgment entered on their verdict would be upheld, except for errors in the charge of the court, which were clearly prejudicial in view of the fact that plaintiff called no medical experts to testify what constituted proper treatment.

"The court instructed the jury, over defendant's exception, that the mere breaking of the needle alone was not necessarily negligence, but might be some evidence of negligence. The plaintiff failed to offer any evidence to rebut defendant's evidence that surgical needles occasionally break, even when the operator uses the highest degree of skill and care. The evidence of the first operation, coupled with the presence of the broken needle in the abscess, standing by itself, might have suggested that proper care had not been taken, and might have been enough to put defendant to his proof. *Goldstein* v. *Pullman Co.*, 220 N. Y. 549, 544, 116 N. E. 376, L. R. A. 1918B, 1060. Common sense suggests that the condition discovered by Dr. Saphir was incompatible with successful surgery and medical treatment. But when the evidence of the defendant's surgeons came into the case, with a reasonable explanation showing what may happen where the proper degree of care and skill is actually exercised, the possible inference of negligence from the breaking of the needle alone was driven out, and the jury should have been so instructed. The rule of res ipsa loquitur put upon the defendant the burden of going on with the case (*Davis* v. *Kerr*, 239 Pa. 351, 86 A. 1007, 46 L. R. A. [N. S.] 611), but, in the absence of medical evidence to the contrary, it must be assumed on this appeal that the breaking of the needle was not due to negligence."

Can it be said in the instant case that, had the defendant known of the presence of the broken steel blade in plaintiff's body, to permit it to take its course through the intestinal tract did not constitute proper treatment? When the defendant's expert testimony indicates that ■ the blade in the ordinary course and practice of medicine should be permitted to pass through the alimentary tract without operative surgery, plaintiff must then meet that proof by expert testimony.

Plaintiff has invoked the doctrine of res ipsa loquitur. If the doctrine were applicable in the instant case to the extent of requiring the defendant to go forward, then defendant met the situation by expert testimony, and established that, even if such foreign object had entered the body as claimed, the alleged results would not follow. The expert testimony shows that the condition complained of was in no way connected with the tonsil operation, and plaintiff's suffering was not related to the operation or treatment for

which plaintiff employed defendant, and plaintiff therefore should have met this situation by expert testimony.

That the plaintiff should be required in every case to produce expert testimony where malpractice is charged would be too broad a statement of the law relating to such matters, or that the doctrine of res ipsa loquitur may not be invoked in any malpractice case would likewise be too sweeping. In the case of *Baxter* v. *Snow*, 78 Utah 217, 2 P. (2d) 257, a number of the cases are collected and distinctions pointed out. That this case cannot be brought within the class of cases known as the gauze or sponge cases or other analogous cases needs no further consideration.

Tested alone by the allegations of the complaint, there are set up such allegations as to make the complaint invulnerable to a general demurrer or to a special attack upon the ground of bar by the statute of limitations, R. S. 1933, 104-2-23 or 104-2-30, both of which fix a limitation of four years; *Peteler* v. *Robinson,* supra. When tested by the proof as was done by the trial court, the situation is very different.

Under the allegations of the complaint, the construction to be given is that the alleged cause of action, if the matters alleged could be said to state only one cause of action, is a cause of action for negligence in performance of the tonsillectomy. Briefly summarized, the acts of negligence complained of were: (a) The improper twisting of a Sluder La Force tonsillotome, the instrument alleged to have been used in the operation. The record is totally barren of any proof tending to support that allegation. (b) The breaking and dropping of a piece of broken blade of the tonsillotome into plaintiff's throat. The only proof presented tending to support this position is the alleged statement made by the defendant relating to the breaking of the blade. The balance rests in the field of inference. (c) Gouging plaintiff's throat after the removal of the tonsils. That the defendant used other instruments and inserted them into plaintiff's throat is admitted. The purpose thereof under plaintiff's theory rests entirely in inference; it being suggested that the instruments used and

the probing done were for the purpose of locating or removing the broken blade. The uncontradicted evidence is that the instruments were used for the purpose of swabbing the throat, trimming the fibers and parts of the tonsil tissue necessary to be removed to complete the operation. (d) Failure to locate the piece of broken blade and permitting it to remain in plaintiff's throat and intestinal tract. This situation suggests a negative matter, and requires an inference from matters connected with the operation. Negligence may be established by showing either that the party charged has done what a reasonably prudent person would not have done, or by failing to do what a reasonably prudent person would have done, under the circumstances. The plaintiff did not advise defendant of the presence of the broken blade in her throat at any time, in fact, she testified she did not know it was there; and defendant testified to matters which, if believed, made any knowledge on his part of the presence of the broken piece impossible. Under such circumstances, a duty to locate or remove the broken blade could not arise. (e) Concealment of the fact that the broken blade had fallen into plaintiff's throat, and misleading and lulling plaintiff into believing her ailments were not what they were. There is no proof of any concealment, deceit, or misrepresentation. In so far as any evidence points to such matters, it establishes that neither party had any information upon the subject either to conceal or communicate.

For the reasons stated, we are of the opinion the trial court committed no error in directing the jury to find the issues for the defendant. Such being the case the judgment appealed from is affirmed; respondent to recover costs on appeal. Such is the order.

STRAUP, C. J., and FOLLAND, J., concur.

ELIAS HANSEN, Justice (dissenting).

In my opinion, the evidence in this cause entitled plaintiff to go to the jury. The negligence charged in the complaint was that:

"(a) Defendant negligently and unskillfully used, operated, turned and/or twisted his instrument, known as a Sluder LaForce Tonsilectome instrument, in such negligent and unskilful manner that he caused the cutting blade of the said instrument to break, and negligently and unskillfully allowed the broken piece of said steel blade, (which broken piece plaintiff alleges was a sharp pointed, three-cornered piece of steel blade approximately one inch in length and ⅝ of an inch in width) to fall or drop into plaintiff's throat while plaintiff was thus lying on the operating table in a helpless position, as aforesaid, and defendant negligently and unskilfully failed to remove the said broken piece of steel blade from the plaintiff's throat immediately after it broke and fell into her throat, or at all.

"(b) That defendant negligently failed to have an X-ray picture taken of plaintiff's throat, while said broken blade was lodged therein, which plaintiff alleges would have disclosed the exact location and position of said broken blade and would thus have facilitated its removal before it passed down her throat into her esophagus.

"(c) That defendant negligently failed to call in the help or assistance of other doctors or physicians, if such help were necessary, in the locating and removing said broken piece of steel blade from plaintiff's throat, but on the contrary plaintiff alleges that defendant in a grossly negligent, careless, and unskilful manner gouged, forced and pried other instruments down plaintiff's throat in a grossly negligent and unskilful effort, as plaintiff now believes and therefore alleges, to recover and remove the said broken piece of steel blade from plaintiff's throat; which negligent and unskilful acts, cut, bruised, scratched and sprained the plaintiff's throat which caused her great pain, suffering and distress for long period of time thereafter.

"(d) That defendant negligently and unskilfully allowed and permitted the said broken piece of steel blade to pass down into plaintiff's throat and into her esophagus where defendant negligently and unskilfully permitted it to remain.

"(e) That plaintiff was wholly ignorant and unaware of the fact that the said broken piece of steel blade had passed down her throat and into her body. That from and after her said tonsillectomy operation the plaintiff suffered constant pain and distress, until the said broken piece of steel blade was removed from her body about the 6th day of January, 1932. That at various and divers times after her said tonsillectomy operation during the years 1925, 1926, 1927, 1928, 1929, and until about July 17th, 1930, the plaintiff went to the defendant as her doctor and physician for relief and treatment from her pain, suffering and distress caused by the said broken piece of steel blade in her body. That during all of said time and times the

defendant negligently failed, and refused to remove or cause the said broken piece of steel blade to be removed from the plaintiff's body, and negligently failed and refused to inform or advise the plaintiff as to the real cause of her ailment, suffering and distress, and negligently failed to advise the plaintiff that said broken piece of steel blade had passed down her throat and into her body; and negligently failed to prescribe for the plaintiff the necessary remedy or steps for its removal. That during all of said period of time to and including the 17th day of July, 1930, as aforesaid, the defendant negligently and unskilfully failed and omitted to prescribe and employ the care and treatment which was necessary and proper and required to give the plaintiff relief from her constant pain and suffering or for the removal of the said broken blade from her body.

"V. The plaintiff alleges that during all of said period of time from about the 13th day of May, 1925, to the 17th day of July, 1930, the defendant was the plaintiff's doctor and physician and that at various and divers times during each and every year during said period the plaintiff came to the defendant as her doctor and physician and sought relief from her pain and distress caused by the said broken piece of steel blade in her body, and for relief from the injury sustained and caused to the plaintiff by the defendant as a result of the said tonsillectomy operation. That during all of said period the defendant was well aware that the cause of the plaintiff's distress and suffering was the said broken piece of steel blade in her body, but that nevertheless the defendant negligently and unskilfully permitted the said broken piece of steel blade to remain in the plaintiff's body, knowing that the same had gone down the plaintiff's throat and into her esophagus, and knowing that the same had not been removed, and knowing that plaintiff was wholly ignorant of the fact that the same was in her body. In this connection plaintiff further alleges that defendant negligently and unskilfully failed and refused to advise plaintiff at the time of said operation, or at any time thereafter, that the said broken piece of steel blade had passed down plaintiff's throat and into her esophagus or that the same was in her body and had not been removed, knowing that the plaintiff was ignorant of such fact, and knowing during all of said time that plaintiff was experiencing great distress, pain and suffering on account thereof, and was asking defendant, as her doctor and physician, to give her relief."

To the complaint, defendant demurred generally and specially. The special demurrer was for uncertainty and upon the ground that the action was barred by the provisions of Comp. Laws Utah 1917, §§ 6467 and 6474. De-

fendant moved to strike certain of the allegations of the complaint, and also moved that plaintiff be required to separately state the cause of action based upon the alleged negligence of the defendant in performing the tonsillectomy on May 13, 1925, and that based upon the alleged negligence of the defendant in the treatment of plaintiff subsequent to the operation. The demurrer was overruled. The motion to strike and the motion to state separately the causes of action were denied. In his answer, defendant admitted that he performed an operation for the removal of plaintiff's tonsils, denied the negligence charged, and pleaded as a bar to the action the sections of the Comp. Laws Utah 1917, relied upon in the demurrer. At the conclusion of the evidence, defendant moved for a directed verdict upon the grounds: First, that the evidence showed plaintiff's cause of action was barred by the statute of limitations and particularly by the sections pleaded in the answer; second, that there was no proof of the negligence alleged in the complaint or any negligence of the defendant; and, third, that there was a failure of evidence to establish the following allegations: That a Sluder La Force instrument was used in the operation; that the instrument used was broken in such manner that a piece of the blade became detached therefrom and went down plaintiff's throat; that defendant was negligent in recovering the blade; that the piece of blade was not removed; that the piece of steel, Exhibit J, is a part of a Sluder La Force instrument; that Exhibit J went into plaintiff's intestinal tract; that plaintiff sustained any damage as a result of Exhibit J being in her body.

Some question seems to be raised in the briefs of counsel and was urged at the oral argument as to the correctness of the order overruling the demurrer, and particularly with respect to the bar of the statute of limitations. No error is assigned because of such ruling, and therefore such question is not before us for review.

It is an elementary rule of law that in passing upon a motion for a directed verdict the evidence must be viewed

in the light most favorable to the party against whom the moving party seeks a directed verdict. Much of the evidence which tends to support any one of plaintiff's claims also tends to support other allegations of the complaint. In view of such fact, it may be well, at the outset, to briefly summarize such evidence as tends generally to support plaintiff's cause of action before proceeding to point out the particular evidence which tends to support the various allegations of the complaint which defendant claims are without support. There is substantial evidence tending to show that defendant is, and for a number of years has been a physician and surgeon; that he is a specialist in the eye, ear, nose, and throat; that at the time of the removal of plaintiff's tonsils, and for nine years prior thereto, and up to the time of the bringing of this action, he was the family physician of the plaintiff; that on May 13, 1925, he removed plaintiff's tonsils; that before the operation was performed a local anesthetic was given to plaintiff; that, after defendant began to remove plaintiff's tonsils, it was discovered that the effects of the local anesthetic so given had worn away and an additional anesthetic was administered; that the operation was very painful, and as a result plaintiff screamed and attempted to get the defendant to desist from proceeding therewith, but the defendant would not release the instrument from her tonsil; that, while the operation was being performed, plaintiff was lying flat on her back on the operating table; that, when the first tonsil was removed, defendant remarked, "Oh, pshaw! I have broken the blade. It shouldn't have broken. It is made of the best steel. Get me another instrument"; that the instrument used in removing the tonsils was similar to and looked like the Sluder La Force instrument which was offered and received in evidence; that, after the tonsils were removed, defendant gouged and clipped something in plaintiff's throat; that, when plaintiff complained of pain and asked defendant what he was doing, he replied he was clipping off the cords in her throat; that, after her tonsils

were removed, plaintiff suffered intense pain in her throat and chest; that for about three weeks she was confined to her bed, was unable to eat any food or drink any liquid; that, after the pain subsided in her throat and chest, she suffered pain in her stomach and later in her abdomen; that she consulted the defendant concerning her ailment in November, 1925, in the spring of 1926, in December, 1928, in April, 1929, and in July, 1930; that, when she consulted the defendant in July, 1930, she informed him that she could feel something moving and sticking within her; that, prior to the removal of her tonsils, plaintiff was in good health; was engaged in nursing, household work, and work on her husband's farm; that after the operation she was in poor health and much of the time was confined to her bed; that she suffered considerable pain, first in her throat and chest, then in her stomach and later in her intestines; that she became constipated and bloated; that in January, 1932, as she was having a bowel movement, she felt the piece of blade, Exhibit J, move down her bowels and lodge in her rectum; that she suffered intense pain until July 6, 1932, when the blade was removed by defendant's brother, who is also a physician; that, after the removal of the blade, plaintiff's internal pain ceased and she began to regain her health. The blade, Exhibit J, was received in evidence and is a part of the record on appeal. It is a triangular piece of steel. It is about the thickness of the blade of an ordinary pocketknife. It measures 7/8 of an inch on one side and 5/8 of an inch on the other two sides. The longest side is sharp, the other two sides are blunt, and show unmistakable evidence of having been broken out of a larger piece of steel. Two of the corners of the blade are sharp; the other somewhat blunt. A more detailed statement of the evidence will be reserved until we reach a discussion of the various grounds relied upon for a directed verdict.

It seems to be respondent's position that it was vital to plaintiff's cause of action for her to prove that the instrument used was a Sluder La Force tonsillotome. I do not

concur in such view. Plaintiff did allege in her complaint that the instrument was known as a Sluder La Force instrument. However, plaintiff's cause of action may not be defeated by a mere lack of knowledge of the name of the instrument used or, if known, a failure to allege correctly the name thereof. "No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits." R. S. Utah 1933, 104-14-1. No question of variance was raised in the court below, and therefore it may not be here raised for the first time. *McCall Co.* v. *Jennings, et al.,* 26 Utah 459, 73 P. 639. It was, however, vital to plaintiff's cause that she produce evidence tending to show among other facts that the instrument used had a blade which broke during the operation; and, if she failed to produce such evidence, there was a failure of proof as distinguished from a variance. Plaintiff and her husband both testified that the instrument used by defendant in removing plaintiff's tonsils was similar in appearance to a Sluder La Force tonsillotome which was received in evidence, and that during the operation defendant made the remark, "Oh, pshaw! I have broken the blade. It shouldn't have broken. It is made of the best steel. Get me another." The Sluder La Force tonsillotome which was received in evidence has two blades which are moved forward and backward through grooves in the side of the instrument. The lower blade is blunt, and is used to pinch and hold the tonsil in place while it is being removed. The upper blade is sharp on the end, and is used to cut off the tonsil. Both blades are moved forward and backward by a screw arrangement. Plaintiff testified that every time defendant turned the thumb screw which controlled the cutting blade she experienced excruciating pain. The plaintiff, her husband, and her sister-in-law testified that the blade, Exhibit J, was in her rectum. The husband and sister-in-law testified that they saw the blade in plaintiff's rectum before it was removed and that

they saw the doctor remove it therefrom. Plaintiff testified that she felt the steel blade move down into the rectum from the bowels above; that she felt it in her rectum, and it caused her intense pain until it was removed. The evidence is all to the effect that, if the steel blade was removed from where the plaintiff and her witnesses testified it was lodged, it must have got into plaintiff's alimentary canal through the mouth. The sharp edge of the steel blade, Exhibit J, is approximately the same length as the cutting blade on the Sluder La Force instrument which was received in evidence. This evidence is all consistent with, and tends to establish, plaintiff's claim that defendant used an instrument with a cutting blade to remove plaintiff's tonsils; that the blade broke and passed down plaintiff's throat and through her alimentary canal. Assuming the facts to be as so testified to (as we must do in passing upon the motion for directed verdict), it is difficult to account for their existence on any other theory than that advanced by plaintiff.

It is earnestly contended on behalf of defendant that such evidence is not worthy of belief, especially in the light of the evidence offered by the defendant and the other expert witnesses who testified in his behalf. Particularly is it urged that it was impossible for the steel blade, Exhibit J, to remain in plaintiff's body from May 13, 1925, to January 6, 1932, or to lodge in plaintiff's rectum or elsewhere in her alimentary canal. A number of doctors did testify that a steel blade such as Exhibit J would pass through an alimentary canal of a person within a few days without such person experiencing any pain or ill effects therefrom, and that it would not or could not lodge in plaintiff's rectum or elsewhere in the alimentary canal. In this connection it should be noted that the doctor who removed the steel blade testified that it was removed from the perineal tissue near the anus and not from the rectum. A layman unfamiliar with the human body and the manner in which it functions is not competent to testify as to the length of time it will probably

require an object such as Exhibit J to pass through the alimentary canal of a person or whether it probably will or will not lodge therein. But a layman who actually sees and feels an object such as Exhibit J lodged in the rectum is not precluded from testifying to such fact. If the trier of the facts believes the layman speaks the truth in such respect, the finding should be made accordingly, notwithstanding experts express an opinion to the contrary. The claim that an object such as Exhibit J lodged in the rectum or other part of the alimentary canal may not be said to be contrary to physical facts or established laws of nature so that courts will take judicial notice that such a claim is unfounded. Human bodies are not all alike, and they do not function in the same manner. Moreover, there was some expert testimony offered which tends to support plaintiff's contention that Exhibit J in all probability would be materially delayed if not prevented from passing through plaintiff's alimentary canal.

Reuben L. Hill testified on behalf of plaintiff. According to his testimony, he had prior to the time of the trial made a study of the human body, including the alimentary canal and its workings. He had taken out a doctor's degree, had been teaching physiology, had dissected a human body, and had served as a sanitary officer of the United States in the World War. At the trial he presented a life-sized manikin of the alimentary canal. He explained the various parts of the alimentary canal and its functions and the extent to which the various parts thereof could be made to expand. He testified that the size of the organs in one person differed from those of another and, that an object such as Exhibit J would be likely to lodge in the pyloric or sphincter valve at the junction of the stomach and the intestines, and that it might well cause an obstruction in the intestines.

It is next urged in support of the order directing the verdict for the defendant that, conceding defendant used an instrument with a blade in it, the blade broke and fell into plaintiff's mouth and was permitted to pass through her

alimentary canal; still such facts failed to show that defendant was negligent. The view thus contended for is contrary to the great weight of judicial authority. If the facts mentioned be established, then this case falls within the doctrine of res ipsa loquitur. The definition of such doctrine, which has often been quoted, is that, "When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." As thus defined, this court has had occasion to apply the doctrine in a number of cases. Among them: *Christensen* v. *Oregon Short L. R. Co.*, 35 Utah 137, 99 P. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159; *Dearden* v. *San Pedro, etc., R. Co.*, 33 Utah 147, 93 P. 271; *Williamson* v. *Salt Lake & Ogden R. Co.*, 52 Utah 84, 172 P. 680, L. R. A. 1918F, 588; *Zoccolillo* v. *Oregon Short L. R. Co.*, 53 Utah 39, 177 P. 201. Cases dealing generally with the doctrine will be found collected in a footnote to the text in 45 C. J. 193 et seq.

There is a conflict in the evidence in this case as to the kind of instrument which was used in removing plaintiff's tonsils, but the evidence is all to the effect that the instrument used, whatever its nature, was under the exclusive control and management of the defendant during the operation. Defendant made no explanation as to how the blade of the instrument broke. His defense was that the instrument used was without a blade.

It is further contended that, if it be conceded that defendant was negligent as claimed by plaintiff, still she failed to make out a case to entitle her to go to the jury because she failed to establish by competent evidence that the injury complained of was caused by the blade falling into her mouth and passing through her alimentary canal. Such contention is bottomed on the claim that plaintiff's injury, if any, could be shown only by expert testimony; that no

such testimony was offered or received at the trial; that, on the contrary, the testimony of a number of expert witnesses shows that the pain, suffering, and sickness complained of by the plaintiff were not and could not have been caused by the steel blade passing through her alimentary canal. As bearing upon that issue, there is evidence tending to show that prior to the operation plaintiff was in good health; that between the time of that operation and the removal of the steel blade from plaintiff's body she experienced cutting pains in various parts of her alimentary canal and was in poor health, but after the steel blade was removed the pains ceased, and she immediately began to regain her health. There is expert evidence which tends to show that the esophagus, the sphincter valve, the intestines near the rectum become painful if cut or otherwise injured, but that the intestines generally may be cut without causing pain; that pain is caused in the stomach and intestines when they are distended as by gas and also when they are pulled out of their normal position; that an object such as the blade, Exhibit J, might well lodge in the sphincter valve and prevent it from completely closing and thus permit food to be forced back into the stomach from the intestines; and, if the blade, Exhibit J, should lodge in the valve or in the intestines, it would tend to prevent the passage of food through the alimentary canal. In answer to a hypothetical question asked three doctors as to what was the probable cause of plaintiff's pain, suffering, and ill health, one attributed them to nervousness due to her being in the change of life; another testified that her pain and ill health could be easily attributed to gall stones or chronic appendicitis; and another expressed it as his opinion that plaintiff had been suffering from neurosis, and many of her pains were probably imaginary.

There is no evidence that plaintiff ever had gall stones or that she suffered from chronic appendicitis. There is evidence that she was of that age when women are in the change of life. In my opinion, the foregoing evidence en-

titled plaintiff to have the jury pass upon the question of whether or not the pain, suffering, and ill health complained of were caused in whole or in part by the presence of the blade in her alimentary canal. If plaintiff was free from pain and in good health up to the time of the tonsillectomy, and if she suffered almost constant pain and ill health until the blade was removed, and that she then was again free from pain and in good health, as testified to by her witnesses, such testimony, if believed by the jury, would tend to support the finding that the presence of the blade caused or contributed to her suffering and ill health. If the jury should find that the blade fell into plaintiff's mouth at the time of the operation and remained in her alimentary canal until it was removed, there is expert testimony that it would likely cause pain and suffering. Parts of the alimentary canal are admittedly sensitive to any scratching or cutting by an object passing through them. There is expert testimony as to the size of the various parts of the alimentary canal and the likelihood of the blade becoming lodged therein, of obstructing the passage of food, and of interfering with the normal functioning of the digestive organs. Such evidence may not be said to be so lacking in substance as to justify as a matter of law a finding that plaintiff failed to establish that she sustained any injury by reason of the steel blade passing into and remaining in her body.

The claim that plaintiff's cause of action is barred by the statute of limitation is not free from doubt. One line of cases seems to support defendant's position that plaintiff's claim is so barred. What I conceive to be the greater weight of authority and supported by the better reasoning is to the contrary. The principles of law announced by this court in the case of *Peteler* v. *Robinson*, 81 Utah 535, 17 P. (2d) 244, are in harmony with the view that plaintiff's cause of action is not barred. In this case, defendant continued to act as the family physician of plaintiff until a very short time before this action was begun. While there was no

agreement between them that the relation of patient and physician should continue for any specified length of time, still plaintiff called defendant whenever she needed medical attention, and each testified at the trial that the latter was family physician of the former for many years prior to the performing of the tonsillectomy and up to the time of the commencement of this action. The relation of the parties in this case, as in the former case, was that of physician and patient, in which the patient reposed trust and confidence in her physician.

It is urged that this case does not fall within the rule announced in the case of *Peteler* v. *Robinson,* supra, because in this case defendant ceased treating plaintiff's shortly after her tonsils were removed, and that such treatment as he thereafter gave plaintiff was for other ailments. In my opinion, the distinction is lacking in substance. If the subsequent ailments suffered by plaintiff were caused by the negligence of the defendant in performing the operation, defendant should not be permitted to plead the bar of the statute merely because the subsequent treatment was confined to some part of plaintiff's body not operated upon. Nor may the two cases be distinguished on the ground that in the former case there were allegations to the effect that the defendant fradulently concealed from plaintiff the fact upon which her cause of action was bottomed, while in the present case there is no evidence that defendant fraudulently concealed from plaintiff any of the facts upon which she relies. Fraud or deceit may arise from silence where there is a duty to speak the truth, as well as from the speaking of an untruth. If the defendant knew that he broke the blade at the time he performed the tonsillectomy, and there is evidence tending to show that he did, and if he knew that the blade passed down plaintiff's throat, and there is evidence from which the jury might so find, then and in such case it may not be said as a matter of law that plaintiff was under no duty to inform the plaintiff of such facts or that he was under no duty to ascertain whether it passed,

or failed to pass, through her alimentary canal. In view of the existence of the relation of physician and patient, the latter had a right to assume that the former would inform her of such occurrence or that he would take such steps as might be necessary to prevent the blade from causing her any injury. Silence on the part of a physician under such circumstances is calculated to deceive and mislead a patient as well, and probably as effectively, as his protestations that no mishap occurred. It is well settled in courts of equity that a fraudulent concealment of a cause of action will postpone the operation of the statute of limitations until the discovery of the fraud. By the weight of authority the same rule prevails in actions at law. 37 C. J. 972; note in 25 L. R. A. 566.

The judgment should be reversed, the case remanded to the court below, with directions to grant a new trial, and the appellant should be awarded her costs.

EPHRAIM HANSON, Justice.

I concur in the views expressed in the dissenting opinion of Mr. Justice ELIAS HANSEN.