Robert L. LIPSCOMB, Jr., and Norman
V. Chatfield, Plaintiffs and Appellants,

v.

Ronald J. CHILTON, Sally G. Chilton,
and John Does 1 through 10,
Defendants and Appellees.

Ronald J. CHILTON and Sally G.
Chilton, Third–Party Plaintiffs
and Appellees,

v.

Tamara C. LIPSCOMB and Catherine
D. Chatfield, Third–Party Defendants
and Appellants.

No. 870139.

Supreme Court of Utah.

June 6, 1990.

Floyd W. Holm, Cedar City, for plaintiffs
and appellants.

Ray M. Harding, Jr., Pleasant Grove, for
defendants and appellees.

HOWE, Associate Chief Justice:

Plaintiffs and third-party defendants appeal from a summary judgment dismissing the complaint and awarding defendants relief on their counterclaim and third-party complaint. The trial court ruled that the six-year statute of limitations on actions founded on contract contained in Utah Code Ann. § 78–12–23(2) barred the complaint, plaintiffs' reply to the counterclaim, and third-party defendants' answer to the third-party complaint.

On December 30, 1977, plaintiffs Robert L. Lipscomb, Jr., and Norman V. Chatfield, together with their wives, Tamara C. Lipscomb and Catherine D. Chatfield, third-party defendants, as buyers, and defendants Ronald J. Chilton and Sally G. Chilton, his wife, as sellers, entered into a written installment agreement for the sale and purchase of a laundromat in Pleasant Grove, Utah. In paragraph 5, the agreement provided:

It is understood by the parties hereto that the property herein sold has been inspected by the Buyers, or their agent and the same is being purchased as a result of such inspection in its present condition, with the following exceptions[:] Sellers warrentee [sic] the roof for a period of one (1) full year. Sellers also warrant all said Laundry Equipment to be in good working order at time of sale. Sellers also agree to assist Buyers with problems that may arise from time to time with the said Laundry Equipment, Plumbing, Electrical, as to advise on wiring and any modifications that may have been made to said Equipment by the sellers.

Shortly after taking possession of the property, the buyers observed defects in the roof, sewer, and equipment. The defects were temporarily repaired but reappeared in subsequent months. Finally, on December 6, 1978, an attorney for the buyers wrote the sellers, making demand upon them for the payment of $1,150 within ten days "for necessary repairs to be made to the roof of the building." A written estimate prepared by a roofing company was attached to the demand letter. The sellers did not comply with the demand, but the buyers continued operation of the laundromat and regular payment of the monthly installment.

On April 16, 1979, the buyers sold the property on an installment contract to Earl L. Smith, who continued to operate the laundromat until March 26, 1983, when a fire damaged both the building and the equipment. It was then discovered that neither the buyers nor Smith had maintained fire insurance on the premises as required by paragraph 8 of the original agreement. The laundromat never reopened for business. Smith defaulted on his contract with the buyers, but they continued making the monthly installment to the sellers up to and including the installment due on November 1, 1984. Thereafter, the buyers made no further payments and, on December 17, 1984, the buyers filed their complaint in this action, seeking damages for the sellers' breach of their agreement to make roof repairs for the first year.

The sellers answered and counterclaimed against plaintiffs and also filed a third-party complaint against plaintiffs' wives, making them third-party defendants. The sellers sought to recover from all of them the balance remaining due under the agreement. They alleged that the buyers (1) had breached the agreement by failing to pay the general property taxes for 1978 through 1981; (2) had failed to maintain fire insurance on the premises as required by the agreement; and (3) had failed to make the monthly installments falling due after November 1, 1984. Defendant-sellers moved for summary judgment on the complaint, which was granted. The trial court ruled that the action of plaintiff-buyers was barred by the six-year statute of limitations on contract actions. § 78–12–23(2). The court further ruled that since any action for the alleged breach of contract by the sellers was time-barred, the breach could not be relied upon by the buyers as a defense to the sellers' counterclaim and third-party complaint. Judgment was entered for the sellers accordingly. The buyers appeal.

In reviewing the correctness of the trial court's ruling, we must determine when the statute commenced to run on plaintiffs' action for breach of the roof warranty. The warranty was contained in paragraph 5 and was stated as follows: "Sellers warrentee [sic] the roof for a period of one (1) full year." The sellers contend that any cause of action which the buyers had for breach of warranty arose when they first discovered leaks in the roof shortly after the agreement was entered into on December 30, 1977. In the alternative, the sellers argue that at the very latest the warranty was breached on December 6, 1978, when the attorney for the buyers made written demand for $1,150 for roof repairs. On the other hand, the buyers assert that no breach of warranty occurred when the defects in the roof were first discovered, because they were promptly repaired by the sellers. The buyers argue that no cause of action for breach accrued until December 30, 1978, which was the last day of the one-year warranty period. Alternatively, they urge that the earliest possible date of accrual of a cause of action would have been on December 16, 1978, which was the end of the ten-day period given to the sellers to respond to the written demand for $1,150 to fix later-appearing leaks. The buyers maintain that their complaint, which was filed on December 17, 1984, was timely, since December 16, 1984, was a Sunday, a holiday under Utah Code Ann. § 63–13–2(1)(a)(i), and that by virtue of section 68–3–7, they had until the following day, December 17, 1984, to file their complaint.

The first sentence of paragraph 5 states clearly that the buyers had inspected the

property and purchased the same in its "as is" condition. One exception was made to that disclaimer—that the sellers warrant the roof for one year. It is noted that this exception does not state that the roof was warranted to be in good condition at the time of sale; it is only that the sellers would warrant it for one year. This means that the sellers would either make or stand liable for necessary roof repairs for one year. Thus, when defects were discovered in the roof shortly after the agreement was entered into, the sellers responded as was their duty and made necessary repairs. There was no breach of the warranty at that time. Later, but still during the one-year period, the buyers again observed defects in the roof and had their attorney make written demand upon the sellers for $1,150 for necessary roof repairs. It was only when the sellers did not respond to the demand either by paying the $1,150 or by making the repairs themselves that a cause of action for breach of warranty arose in the buyers. At that time, the six-year statute of limitations provided for in section 78-12-23(2) commenced to run.

In reaching this conclusion, we find support in *Beaudry Motor Co. v. New Pueblo Constructors, Inc.*, 128 Ariz. 481, 626 P.2d 1113 (Ct.App.1981). There, the plaintiff brought action for breach of warranty against the defendant builder, who the plaintiff alleged had agreed to warrant the roof against leaks for a period of two years. Approximately six months after completion of construction, leaks appeared which the defendant attempted to remedy but failed. Finally, six months later, the defendant abandoned all efforts to repair the roof and disclaimed any further responsibility. The court held that the six-year statute of limitations commenced to run at the time of the disclaimer even though it was prior to the end of the two-year warranty period claimed by the plaintiff. Said the court:

> During the warranty period, appellant [plaintiff] had the option to treat any defects in its roof as an immediate breach or to allow appellee [defendant] an opportunity to remedy the defects. See *Fowler v. A & A Company*, 262 A.2d

344 (D.C.App.1970). As soon as appellee abandoned all efforts to repair the roof and disclaimed all responsibility, however, the appellant no longer had any choice because there was an unequivocal breach. See [i]d., *Zellan v. Cole*, 183 F.2d 139 (D.C.Cir.1950). Appellant's cause of action accrued at that moment and the statute of limitations began to run.

128 Ariz. at 482–83, 626 P.2d at 1114–15 (citations omitted).

Justice Zimmerman suggests in his opinion that the parties may have meant by the "warrentee" only that the "roof would not leak for a year" and that when the first leak occurred early in 1978, there was an immediate breach and the statute of limitations commenced to run at that time. Assuming that there was a breach at that time, the buyers had the right to waive the breach since the leaks were promptly and satisfactorily repaired. *Beaudry Motor Co. v. New Pueblo Constructors, Inc., supra.* That waiver, however, should not prevent the buyers from suing for a later breach during the one-year period which the sellers refused to remedy. Buyers should not be compelled to sue on the first breach or risk losing the benefit of the one-year protection.

It follows that plaintiffs' complaint filed December 17, 1984, was not time-barred, nor had the statute run against the buyers on their defense to the sellers' counterclaim and third-party complaint, a defense based on breach of the roof warranty. The trial court erred in granting summary judgment.

The sellers additionally contend that even if they materially breached the agreement, any right that the buyers had to rescind or abandon the agreement has been waived by their failure to give prompt notice of rescission to the sellers, remaining in possession, selling the property to Smith, and making the monthly installments until November 1, 1984. In view of the fact that the trial court did not reach this defense and did not rule on its merits, we express no opinion on this issue.

The summary judgment is reversed, and the case is remanded to the trial court for further proceedings.

HALL, C.J., and STEWART, J., concur.

ZIMMERMAN, Justice (concurring and dissenting):

I agree that the summary judgment should be vacated and the matter remanded for trial. However, I disagree that we can determine as a matter of law from the four corners of the agreement whether the statute of limitations has run on plaintiffs' claim for the faulty roof. I think that the contract is ambiguous as to the use of the term "warrentee [sic]" and that parol evidence should be adduced and the question presented to the finder of fact. If the finder of fact agrees with Justice Howe's unexplained assumption that by the words "sellers warrentee [sic] the roof for a period of one (1) full year" the parties intended that the sellers would repair the roof during that period of time, then the finder of fact could conclude that the agreement was breached on December 16, 1978, when the seller declined to pay the amounts demanded. Because of the effect of section 68–3–7 of the Utah Code, plaintiffs would have had until Monday, December 17, 1984, to file their complaint, and the court would have to reach the other issues spelled out in Justice Howe's opinion.

However, if the finder of fact determines that by warranting the roof the parties meant only that the seller was representing that the roof would not leak for a year, then the contract was breached when the roof first leaked and the six-year statute of limitations ran long before the buyers filed their complaint. If this should be the case, then the sellers are entitled to their summary judgment. There is no question that this meaning of the word "warranty" would be as legitimate as the one chosen by Justice Howe. One law dictionary defines the word in both senses. " '[W]arranty' is generally understood as an absolute undertaking ... *against the defect, or for the quantity or quality contemplated by the parties* in the subject matter of the

contract." J. Ballentine, *Law Dictionary* 1355 (1948) (emphasis added). And one common dictionary defines the term only in the second sense, as "a guarantee; spe-cif[ically], *a*) a guarantee or an assurance, explicit or implied, of something having to do with a contract, as of sale; esp[ecially], the seller's assurance to the purchaser that the goods or property is or shall be as represented." *Webster's New World Dictionary of the American Language* 1602 (2d College ed. 1970).

Justice Howe suggests that even if a finder of fact were to adopt this second interpretation, the result would be the same. He contends that plaintiffs would still be found to have filed their complaint within the statutory period on the theory that they had the right to waive the initial breach when defendants repaired the leaks early in 1978. This suggestion is without merit because it does not comport with the facts we have before us on the record. On December 6, 1978, plaintiffs' attorney, John C. Backlund, sent a letter to defendants demanding a payment of $1,150 "for necessary repairs to be made to the roof of the building." The letter gave defendants ten days from the date of the letter within which to respond and threatened defendants with "appropriate legal action" should they fail to comply. This letter clearly demonstrates the existence of unrepaired leaks of which plaintiffs had full knowledge on or before December 6, 1978. The letter also demonstrates that plaintiffs had no intention of waiving any breach of the warranty. Therefore, even if a finder of fact could find that plaintiffs waived the initial breach in early 1978, it could also find that as of at least December 6th, they were asserting the existence of a breach. If the parties intended the word "warrentee [sic]" to carry the second meaning explained above, the statutory period would have begun to run sometime before December 6, 1978, with the result that the action would still be barred as untimely.

I understand that the course I suggest is more troublesome than the one Justice Howe follows and that it raises the possibility that the buyers may have lost a defense

by sitting idly by for six years. However, for us to select one meaning of the words of the agreement when another is equally plausible is for us to find facts, something beyond our proper authority. For that reason, I dissent.

DURHAM, J., concurs in the concurring and dissenting opinion of ZIMMERMAN, J.