Stephen CURRIER, Petitioner
and Appellant,

v.

Tamara HOLDEN, Warden, Respondent
and Appellee.

Carl McCLELLAN, Plaintiff
and Appellant,

v.

Tamara HOLDEN, Defendant
and Appellee.

Nos. 920467–CA, 930123–CA.

Court of Appeals of Utah.

Sept. 17, 1993.

Rehearing Denied Nov. 5, 1993.

**1358**

Kathryn Kendall, Ogden, and Stephen Currier, Draper, for appellant in No. 920467–CA.

Steven J. Aeschbacher, Salt Lake City, for appellant in No. 930123–CA.

1. Senior Judge Regnal W. Garff, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (1992).

2. Because the cases present common constitutional questions concerning the same statute

Jan Graham and Martin B. Bushman, Salt Lake City, for appellee.

Before GARFF[1], GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Petitioners Stephen Currier and Carl McClellan seek to have this court reverse the respective dismissals of their petitions for writs of habeas corpus on the ground that the statute of limitations barring these petitions is unconstitutional.[2] We conclude that the limitation period in Utah Code Ann. § 78–12–31.1 (1992) is an unreasonable limitation on the constitutional right to petition for a habeas corpus writ that violates petitioners' rights under Article I, section 11 of the Utah Constitution to seek a civil remedy in state courts. We, therefore, reverse both dismissals and remand these cases for consideration of their substantive claims.

## FACTS

Although we have consolidated these two cases for purposes of this opinion, we present their facts separately.

### Currier v. Holden

After Currier was charged with the first degree felony, sexual abuse of a child on October 3, 1988, he entered into a plea bargain whereby he pled guilty to a second degree felony. However, when the trial court sentenced Currier to eighteen months probation and required him to serve six months in the Carbon County Jail as a condition of probation, he attempted to withdraw his guilty plea. Currier brought two motions in which he alleged that the plea bargain resulted from wrongful and undue pressure on the part of his counsel and claimed that his counsel admitted un-

and because, in many instances, the State responded to petitioner's arguments with identical counter arguments, we have consolidated these two cases for the purpose of this opinion. *See* Utah R.App.P. 3(b).

duly pressuring him. When the trial court denied these motions to withdraw his guilty plea, Currier appealed his conviction. Currier later dropped this appeal and was released from jail, remaining on probation. Subsequently, the State revoked Currier's probation after he tested positive for a controlled substance and returned him to prison.

On October 21, 1991, Currier's co-defendant, Mr. Marquez, executed an affidavit, notarized one week later, in which he recanted damaging testimony he had previously given against Currier. After Currier received a copy of this affidavit in November 1991, he contacted the contract attorneys[3] for the Utah State Prison, for assistance in filing a petition for a writ of habeas corpus seeking to allow him to withdraw his guilty plea. On December 16, 1991, the contract attorneys received Currier's edited rough draft of his petition. Immediately thereafter, Currier was transferred to San Juan County Jail.

On approximately January 6, 1992, Currier sent a letter to the contract attorneys at the State Prison, and received from them a revised petition for the habeas writ and his transcripts. Along with these papers the attorneys sent a memorandum stating that because Currier had been moved out of their jurisdiction they could no longer assist him and he would have to seek assistance from the San Juan County contract attorney. Currier requested an appointment with this contract attorney, but was unable to see him for five weeks.

Currier was transferred back to the Utah State Prison about March 20, 1992. At that time he gave the prison contract attorneys his petition for writ of habeas corpus and exhibits for them to file with the court. Currier's paper work was returned to him at the prison for his signature on March 25,

1992 and on April 10, 1992, Currier's petition was filed.

In his petition, Currier claimed ineffective assistance of trial counsel at the time of his plea agreement and at his sentencing. He alleged that his attorney used undue and wrongful pressure to induce him to enter into a plea bargain.[4] Currier claimed his counsel had convinced him to drop his original appeal and to agree not to file suit against counsel because counsel could arrange for his release from the six month term he was serving in the county jail through probation and suspension of his sentence.

The State responded to Currier's petition by filing a motion to dismiss based on the statute of limitations, claiming that six months had passed since Currier received the affidavit withdrawing the damaging testimony. After the district court granted the State's motion to dismiss, Currier filed this appeal.

### McClellan v. Holden

On August 28, 1988, two days prior to trial, McClellan's original public defender withdrew and the court assigned him new counsel. McClellan, however, insisted on proceeding to trial, after which he was convicted of rape and sentenced to five years to life in the Utah State Prison.

About a month after the trial, the trial court received a request for a rehearing in a letter from McClellan which the trial court treated as a motion for a new trial. In his letter, McClellan claimed denial of effective assistance of counsel because his new attorney had not had time to prepare for trial. The trial court denied McClellan's motion for new trial on February 6, 1989.

Although McClellan's counsel, James Rupper, filed a notice of appeal of the

---

3. The prison contracts with attorneys who assist prisoners by reviewing complaints concerning their incarceration and by advising them in preparing writs of habeas corpus.

4. Specifically, Currier claimed that he did not know what he was signing when he waived his preliminary hearing, he tried to withdraw his guilty plea when the prosecutor denied the exis-

tence of a plea bargain, his counsel had an undisclosed conflict of interest because counsel also represented Currier's co-defendant, and, finally, he then had affidavits indicating that both a witness and a victim recanted critical incriminating testimony concerning the sexual abuse charges against him.

original sentence, McClellan complains that he had no communication as to the status of the appeal from counsel and states that he was continually frustrated in attempts to contact Mr. Rupper. On July 12, 1990, McClellan finally communicated with Mr. Rupper who informed him of the status of his appeal and announced that Kent Willis had been handling his case since January 1990. McClellan says that he was unable to contact Mr. Willis until May 1991. At that time Mr. Willis told him that he anticipated filing a motion to remand for new trial with the Utah Court of Appeals. In May 1991, McClellan wrote the court of appeals and was informed that the trial transcript had not been located.[5] On August 14, 1991, Mr. Willis withdrew as counsel and Donald Elkins replaced him. McClellan says he was "never able to have any communication from Mr. Elkins."

On September 30, 1991, McClellan submitted his own writ of habeas corpus to the Third District Court.[6] In this petition, McClellan claimed ineffective assistance of trial counsel and appellate counsel, and complained about the failure of counsel to perfect an appeal, and the unavailability of his trial transcript.

The trial court appointed Mr. Aeschbacher as counsel to represent McClellan in his habeas action and gave McClellan thirty days in which to amend his habeas corpus petition. McClellan submitted his amended petition on January 14, 1992.

On March 3, 1992, the State moved to dismiss McClellan's petition for writ of habeas corpus on several grounds, including that it was untimely. About two weeks later McClellan submitted a memorandum in opposition to the State's motion to dismiss, claiming that his inability to obtain effective assistance of counsel for his appeal should preclude dismissal based on the statute of limitations. After a hearing, the district court dismissed the habeas petition as barred by the three-month statute of

limitations in Utah Code Ann. § 78–12–31.1 (1992). The district court concluded that February 6, 1989, the date when the trial court denied McClellan's motion for a new trial, commenced the running of the statute of limitations for purposes of the writ of habeas corpus petition. McClellan appealed this dismissal of his writ.

## ISSUES

In presenting their appeals to this court, each petitioner claims that the three-month statute of limitations is unconstitutional. Specifically, Currier argues that the statute (1) does not provide a reasonable period in which to file for relief, (2) contains no provision for excusable delay, and (3) requires invalidation because a judicial rule of procedure should not be subject to a statute of limitations. McClellan argues that the statute of limitations is unconstitutional because it (1) undermines the extraordinary purpose of the writ, (2) limits the right to remedy by due course of law as provided in the Utah Constitution, Article I, section 11, and (3) creates practical problems in administration because of its inherent ambiguity. Because we resolve both cases by evaluating the constitutionality of the statute under Article I, section 11 of the Utah Constitution, we need not individually address the other issues raised by the petitioners.

## ANALYSIS

### I. Statute of Limitations

■ In both of the cases consolidated in this opinion, petitioners claim that Utah Code Ann. § 78–12–31.1 (1992) violates the "open courts provision," Article I, Section 11 of the Utah Constitution because it unreasonably curtails their constitutional right to seek a civil remedy in state court. Utah Code Ann. § 78–12–31.1 requires a filing of the petition

---

**5.** In November or December of 1991, the trial transcript was finally located. McClellan, however, requested dismissal of his appeal at the end of January 1992 and the appeal was dismissed for failure to prosecute.

**6.** McClellan's petition was stamped by the court on October 23, 1991 and the State used the October date to calculate the length of time elapsed for purposes of the statute of limitations.

Within three months:

For relief pursuant to a writ of habeas corpus. This limitation shall apply not only as to grounds known to petitioner but also to grounds which in the exercise of reasonable diligence should have been known by petitioner or counsel for petitioner.

*Id.* This statute acts as a statute of limitations because it "requires a lawsuit to be filed within a specified period of time after a legal right has been violated or the remedy for the wrong committed is deemed waived." *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985); Utah Code Ann. § 78-12-1 (1992). It is distinguishable from a statute of repose which bars any action after the running of a time period beginning with the occurrence of an event other than the injury underlying the cause of action. *Berry*, 717 P.2d at 672.

## II. The Open Courts Provision

■ Despite the significant difference between statutes of limitations and statutes of repose, both categories of time limitations impact an individual's right to seek redress in state courts. In Utah this right has a constitutional dimension based upon Article I, Section 11 of the Utah Constitution. *See Condemarin v. University Hosp.*, 775 P.2d 348, 358 (Utah 1989). This provision states:

All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.[7]

Although as yet no Utah appellate court has analyzed a statute of limitations under this provision, a significant line of cases has examined statutes of repose under this constitutional provision. *See Sun Valley*

*Water Beds v. Hughes & Son*, 782 P.2d 188 (Utah 1989); *Horton v. Goldminer's Daughter*, 785 P.2d 1087 (Utah 1989); *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985); *Velarde v. Industrial Comm'n*, 831 P.2d 123 (Utah App. 1992). However, neither the language of the open courts provision nor supreme court discussion about the provision indicates that its protective scope should be limited to invalidating statutes of repose. The supreme court views section 11 as having potentially broad application. *Horton*, 785 P.2d at 1093. The open courts provision is not primarily concerned with particular, identifiable causes of action, but rather with the availability of legal remedies to vindicate individuals' interest "in the integrity of their persons, property, and reputations." *Berry*, 717 P.2d at 677 n. 4.

Furthermore, the fundamental principles underlying the open courts provision apply equally to statutes of limitations as to statutes of repose. The open courts provision guarantees "access to the courts and a judicial procedure that is based on fairness and equality," and prevents arbitrary deprivation of "effective remedies designed to protect basic individual rights." *Id.* at 675. Section 11 protection specifically extends to "'the right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security.'" *Id.* at 680 (quoting *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977)). *See also Horton*, 785 P.2d at 1091. To accomplish this purpose, section 11 imposes limits on the legislature for the protection of injured persons who are isolated in society and lacking political influence. *Berry*, 717 P.2d at 676; *Condemarin*, 775 P.2d at 367 (Zimmerman, J., concurring).

These principles certainly apply to the statute at issue in these cases. The constitutional right to petition for habeas corpus relief is a basic individual right and prisoners constitute a group needing protection

---

7. As Chief Justice Hall pointed out in his dissent in *Condemarin*, this provision did not "create a new legal remedy or a new right of action." *Condemarin*, 775 P.2d at 378 n. 14 (quoting *Madsen v. Borthick*, 658 P.2d 627, 629 (Utah 1983)). It enabled the courts to "protect and enforce existing rights only in accordance with known remedies." *Id.* (quoting *Brown v. Wightman*, 47 Utah 31, 34, 151 P. 366, 366-67 (1915)).

because they are isolated in society and lack political influence.

Finally, we note that the supreme court has stated that specific distinctions should not divert the court from the basic issue underlying the constitutionality of a statute under the open courts provision: the critical question is whether a legislative enactment denies a litigant "a remedy by due course of law." *Horton*, 785 P.2d at 1092; *Berry*, 717 P.2d at 679. For these reasons, we agree with petitioners that the statute of limitations barring their petitions for habeas corpus relief merits review under the open courts provision.[8]

■ Our decision to review section 78–12–31.1 under the open courts provision invokes the specific analytical framework developed by the supreme court to structure section 11 review. This two part test first inquires into whether a statute abrogating an existing remedy provides "an effective and reasonable alternative remedy," and second, if no alternative remedy is provided, examines whether the statute eliminates "a clear social or economic evil" through means that are not unreasonable or arbitrary. *Berry*, 717 P.2d at 680; *see also Horton*, 785 P.2d at 1094; *Condemarin*, 775 P.2d at 358.[9]

## III. Standard of Review

■ Generally, in considering an appeal from a dismissal of a petition for a writ of habeas corpus, we accord no deference to the conclusions of law upon which the trial court based its dismissal. Rather, as an appellate court, we review the decision to dismiss for correctness. *Smith v. Cook*, 803 P.2d 788, 790 (Utah 1990); *Termunde*

*v. Cook*, 786 P.2d 1341, 1342 (Utah 1990) (citing *Fernandez v. Cook*, 783 P.2d 547 (Utah 1989)).

■ In this case, the district courts specifically based their decisions to dismiss the respective petitions for habeas corpus relief upon a statute of limitations which petitioners challenge as unconstitutional. In response to both appeals, the State claims that Utah Code Ann. § 78–12–31.1 (1992), as a legislative enactment, deserves a strong presumption of validity. *City of Monticello v. Christensen*, 788 P.2d 513, 516 (Utah 1990). It argues that statutes should " 'not be declared unconstitutional unless there is no reasonable basis upon which they can be construed as conforming to constitutional requirements.' " *Id.* (quoting *In re Criminal Investigation, 7th Dist. Ct.*, 754 P.2d 633, 640 (Utah 1988)). However, because this statute of limitations impacts the constitutional right to petition for a writ of habeas corpus, which as a civil remedy is protected under Article I, Section 11 of the Utah Constitution, the usual presumption of validity does not control our review of this statute.

Furthermore, in *Hipwell v. Sharp*, 858 P.2d 987, 988 n. 4 (Utah 1993), Justice Hall noted that a majority of the Utah Supreme Court had agreed in the *Condemarin* opinion that analyzing the constitutionality of a state statute under the open courts provision implicated a heightened level of review. *Id.* (discussing *Condemarin v. University Hosp.*, 775 P.2d 348 (Utah 1989)). At the same time, however, Justice Hall noted an analytical disagreement among the justices concurring in the *Condemarin* opinion, which requires us to examine other

---

8. Justice Zimmerman suggested in a previous opinion that the constitutionality of Utah Code Ann. § 78–12–31.1 might be challenged and analyzed under the open courts provision. *See Smith v. Cook*, 803 P.2d 788, 796 (Utah 1990) (Zimmerman, J., concurring, joined by Justice Stewart). Justice Zimmerman stated, "I do not think the legislature can validly impose a three-month limitation period on habeas corpus actions." *Id.* (citing Utah Const. art. I, §§ 5, 11; *Condemarin v. University Hosp.*, 775 P.2d 348, 366–69 (Utah 1989) (Zimmerman, J., concurring in part); *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 675 (Utah 1985)).

9. While applying this two part test imposes more structure on our analysis than either the federal or state due process clauses, the two part test is not inconsistent with due process analysis. Under due process, "[t]o be constitutional, a statute of limitations must allow a reasonable time for the filing of an action after a cause of action arises." *Berry*, 717 P.2d at 672. The section 11 framework simply identifies the criteria by which we should evaluate the reasonableness of a limitation on the right to seek civil remedy in state court.

factors to determine the appropriate level of scrutiny by which to review this particular statute.[10]

■ We looked to discussion in section 11 precedent and to other supreme court cases to determine what supplemental factors impact the standard for reviewing legislative enactments. The two criteria which we find relevant are (1) the degree to which a statute impairs an individual's right to seek remedy, and (2) the nature of the right impaired.

### A. Degree of Impairment

In *Condemarin*, Justice Durham stated that "[t]he greater the intrusion upon the constitutionally protected interest, the greater and more explicit the state's reasons must be" for enacting the particular statute. *Condemarin v. University Hosp.*, 775 P.2d 348, 358 (Utah 1990). After reviewing the supreme court opinions evaluating statutes of repose, we conclude that "degree of impairment" factored into the level of review conducted in those cases. Those courts criticized statutes of repose because (1) they are not designed to provide a reasonable time in which to file an action, and (2) the statutory time period in which to file an action might expire prior to the time when the cause of action accrues. *See Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1095 (Utah 1989); *Sun Valley Water Beds v. Hughes & Son*, 782 P.2d 188, 189 (Utah 1989); *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985). Their criticism indicates an implicit conclusion that statutes of repose constitute a significant impairment of the right to seek remedy in state court. Each court then discussed in detail the problems that the legislature intended to

address, and evaluated the rationality and effectiveness of the statutory means the legislature selected to deal with these problems. Thus, either implicitly or explicitly, the supreme court has considered the degree of impairment prior to implementing section 11 analysis and has conducted a particularistic evaluation on that basis.

In assessing the significance of "degree of impairment" in reviewing a statute of limitations, we note that cases which criticize statutes of repose simultaneously distinguish these statutes from statutes of limitations. "[A] statute of repose begins to run from a date unrelated to the date of an injury, it is not designed to allow a reasonable time for the filing of an action once it arises." *Berry*, 717 P.2d at 672. By contrast, a statute of limitations only begins to run from the time that a cause of action accrues or after the violation of a legal right. *See Horton*, 785 P.2d at 1090; *Berry*, 717 P.2d at 672; Utah Code Ann. § 78–12–1 (1992). Thus, by their nature, statutes of limitations do not present a degree of impairment comparable to that created by statutes of repose. For this reason, factoring the degree of impairment into section 11 review of statutes of limitations requires an explicit threshold inquiry into the actual effect of the statute on the particular right impacted by the statute.

In making this inquiry, we compared the three month limitation period in section 78–12–31.1 (1992) to the time limitations imposed by comparable statutes of limitations in other states and by other statutes of limitations in the Utah Code. In his brief, Currier notes, and the State does not dispute, that Utah's three-month limitation period for the right to petition for a writ of habeas corpus is the nation's shortest, when compared with other states.[11] We

---

10. Our decision that other factors impact the standard of review comports with a statement in *Berry* that section 11 review is not synonymous with the federal due process review to which the State proposes we adhere. The *Berry* court, after affirming the prerogative of the legislature to adapt the law to changing circumstances and the presumption of constitutionality for legislative enactments, clearly refuted any idea "that a proper constitutional analysis of section 11 can be made on those principles alone." *Berry*, 717 P.2d at 678.

11. Although this court is not bound by precedent from other states, we have noted the discrepancy in the length of statutory periods that different states have enacted and in some instances upheld. We have discovered only one other state with a three-month limitation statute, *Day v. State*, 770 S.W.2d 692 (Mo.1989) (en banc), *cert. denied sub. nom., Walker v. Missouri*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989), and one with a 120–day limitation. *Bartz v. State*, 314 Or. 353, 839 P.2d 217 (1992).

also note that, in comparison to other limitation periods in effect within this state, this statute of limitations creates the shortest filing period specifically mandated by the Limitations of Action chapter of the Utah Code. *See* Utah Code Ann. §§ 78–12–1 to –48.[12]

Regardless of the reasons for the selection of the abbreviated filing period,[13] these comparisons indicate that section 78–12–31.1 creates a relatively severe limitation on an individual's right to petition for habeas corpus relief. This level of impairment indicates that we should carefully scrutinize the purpose and effectiveness of the statute that petitioners challenge. However, because we recognize that even this abbreviated limitation period lacks the potential severity and inherent unreasonableness created by statutes of repose, we look to our second criteria before finally deciding on the proper level of review for the statute of limitations challenged by these petitioners.

### B. Nature of the Right Impaired

Previous cases from the supreme court indicate that the nature of the individual right impacted by a statute influences the level of scrutiny which a court should employ in examining that legislation. Generally, "a court will exercise stricter scrutiny in evaluating measures that encroach upon civil liberties than it will with respect to statutes that impact what can be character-

ized as only economic interests." *In re Criminal Investigation, 7th Dist. Ct.,* 754 P.2d 633, 640 (Utah 1988) (citing *Allen v. Trueman,* 100 Utah 36, 57, 110 P.2d 355, 365 (1941) (Wolfe, J., concurring)). Utah courts attribute "very different legal significance" to individual liberties historically considered as "the indispensable conditions of a free society" than to "liberties which derived merely from shifting economic arrangements." *Allen,* 110 P.2d at 365. They refuse "to presume the constitutionality of a statute when the statute deprives one of a right established by ... the state constitution," for the reason that a constitutional right carries greater weight than "a nonconstitutional interest, such as a general social or economic interest." *Condemarin v. University Hosp.,* 775 P.2d 348, 370 (Utah 1989) (Stewart, J., concurring). Even the supreme court, "while adopting a perfunctory standard of review under the federal due process clause for economic regulation in general, ... explained that legislation impairing rights specifically protected by the federal constitution would require more careful review." *Condemarin,* 775 P.2d at 368 (Zimmerman, J., concurring) (discussing *United States v. Carolene Products Co.,* 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938)).

In the cases consolidated in this opinion, petitioners claim unconstitutional impairment of individual rights having character-

At the other end of the spectrum, several states have enacted five year limitations periods. *Housley v. State,* 119 Idaho 885, 811 P.2d 495 (Ct.App.1991); *State v. Perry,* 232 Mont. 455, 758 P.2d 268 (1988); *Albert v. State,* 466 P.2d 826 (Wyo.1970). Other jurisdictions fall in between these extremes. *Perkins v. State,* 487 So.2d 791 (Miss.1986) (three year limitation period); *Davis v. State,* 443 N.W.2d 707 (Iowa 1989) (three year limitation period).

**12.** The range of limitation periods described in other statutes of limitations extends from seven years for real property actions, Utah Code Ann. § 78–12–5, and eight years for actions upon a judgment or decree, *id.* § 78–12–22, to six months for actions against an officer in his or her official capacity, *id.* § 78–12–31. In particular, even an action for the tort of false imprisonment only needs to be filed within one year. *Id.* § 78–12–29(4).

**13.** During oral argument the panel questioned the State about the justification for this comparatively short limitations period, considering that the general purpose of statutes of limitations, including those extending up to eight years, is to compel the exercise of a right within a reasonable time to avoid stale claims, loss of evidence and faded memories. *Horton v. Goldminer's Daughter,* 785 P.2d 1087, 1091 (Utah 1989). The State responded that the three-month period appropriately fits the nature of the proceedings, considering that claims raised in habeas petitions are readily ascertainable and that a petitioner is assumed to know his or her claims. McClellan's counsel, on the other hand, responded that the abbreviated statute of limitations reflected a legislative bias against the habeas corpus petition based on public outcry against high profile cases in which serial filings of habeas corpus petitions created long delays in the execution of capital punishments.

istics that generally suggest heightened scrutiny. In Utah, the right to petition for habeas corpus relief in state court is protected through Article I, Section 5 of the Utah Constitution. This provision, which essentially parallels Article I, Section 9 of the United States Constitution, provides: "The privilege of the writ of habeas corpus shall not be suspended, unless, in case of rebellion or invasion, the public safety requires it." The express constitutional protection accorded the writ of habeas corpus evolved out of recognition of the significant role that the writ played in the history of state law. *Hurst v. Cook*, 777 P.2d 1029, 1033 (Utah 1989). Its function is to "provide a means for collaterally attacking convictions when they are so constitutionally flawed that they result in fundamental unfairness and to provide for collateral attack of sentences not authorized by law." *Id.* at 1034–35. The Utah Supreme Court has deemed the writ "the precious safeguard of personal liberty" and defined habeas corpus as "a procedure for assuring that one is not deprived of life or liberty in derogation of a constitutional right." *Id.* at 1034.

Having determined that the statute at issue in this case creates a significant impairment of an important constitutionally based personal right, we conclude the challenges of Utah Code Ann. § 78–12–31.1 (1992) require higher scrutiny than minimal deferential review and demand more than a determination that the statute does not represent a "case[ ] of extreme arbitrariness." *Condemarin*, 775 P.2d at 369 (Stewart, J., separate opinion). We believe that this conclusion is consistent with discussion in *Berry* noting that the open courts provision has no analogue in the federal constitution, *Berry*, 717 P.2d at 674, and declaring the state constitution "free to provide greater protections for our citizens than are required under the federal constitution." *Id.* at 677.

IV. Application of Heightened Scrutiny in Section 11 Analysis

In conducting the analysis of a statute under the open courts provision, the *Berry* court began with the proposition that government was fundamentally obligated "to provide reasonable remedies for wrongs done [to] persons." *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 679 (Utah 1985) (discussing *Wilson v. Iseminger*, 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902)). Any attempt to " 'bar the existing rights of claimants without affording this opportunity [to try rights in the courts] ... would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions.' " *Id.* at 679–80 (quoting *Wilson*, 185 U.S. at 62, 22 S.Ct. at 575); *see also* 51 Am.Jur.2d *Limitations of Actions*, § 28, at 613 (1970).

Statutes of limitations, like statutes of repose, however, do not create the total abrogation of all remedies forbidden in the *Berry* decision. Because these statutes only bar a cause of action "after a specified period of time has elapsed," evaluation of the constitutionality of these statutes must consider the legislative purpose out of respect for the legislature's prerogative "to cope with widespread social or economic evils." *Berry*, 717 P.2d at 680. Because of this accommodation, "section 11 does not recede before every legislative enactment, but neither may it be applied in a mechanical fashion to strike every statute with which there may be conflict." *Id.* Instead, the reviewing court will only declare a statute unconstitutional if it is "arbitrary, unreasonable, and will not achieve the statutory objective." *Id.* at 681. If a reviewing court closely examines an enactment under section 11, it will invalidate that act if it imposes a disability "on individual rights which is too great to be justified by the benefits accomplished." *Condemarin v. University Hosp.*, 775 P.2d 348, 358 (Utah 1989). When reviewing a statute that abrogates a remedy or cause of action without providing an "effective and reasonable alternative remedy 'by due course of law,' " section 11 requires a "balancing analysis." *See Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1094 (Utah 1989); *Condemarin*, 775 P.2d at 358; *Berry*, 717 P.2d at 680. The statute must be justified by its elimination of a clear economic or

social evil through a reasonable and non-arbitrary means. *Berry,* 717 P.2d at 680.[14]

### A. The Legislation's Purpose and Effect

██ In examining the legitimacy of the legislature's purpose in enacting Utah Code Ann. § 78–12–31.1 (1992), we note that Utah courts have validated the State's general interest in placing a reasonable time limit on when an action can be brought. *Horton v. Goldminer's Daughter,* 785 P.2d 1087, 1091 (Utah 1989). However, closely reviewing this particular statute under the open courts provision requires us to specifically assess "the legitimacy of the legislative purpose and the extent to which said purpose was reasonably and substantially advanced by the means utilized." *Condemarin v. University Hosp.,* 775 P.2d 348, 358 (Utah 1989). This review includes both an examination of the legislature's selection of a three-month limitation period and' inquiry into the degree to which that particular time period reasonably and substantially advances the legislature's stated objectives.

The State contends that this three-month limitation on the right to petition for a habeas writ is reasonable because the short time period (1) keeps evidence fresh and records available, (2) promotes finality which helps the state and is vitally important to victims and witnesses, (3) conserves state resources, (4) prevents unfair delay in hope of faded memory or unavailable witnesses, (5) curtails belated suits with resulting increased costs, burdens and delay, and (6) prevents unjustified acquittal in instances where the State cannot re-prosecute the case. Although we acknowledge the legitimacy of these purposes for statutes of limitations in general, we question whether these particular purposes justify a three-month limitation period. As the court noted in *State Insurance Fund v.*

*Industrial Comm'n,* 116 Utah 279, 209 P.2d 558, 559 (1949), the construction of a statute "which requires such undue haste, which is fraught with such potential hardships is not in keeping with the spirit of a statute of limitations, the purpose of which is to put at rest stale claims." As a later court explained in discussing statutes of repose, the open courts provision "make[s] certain that periods of repose only be allowed when the possibility of injury and damage has become highly remote and unexpected. Short of that, injured persons are to be allowed their remedy." *Horton,* 785 P.2d at 1095.[15] Because problems with excessive delay, fading memories and unjustified acquittals may take years, not merely three months, to develop, we do not find the State's explanation of legislative objectives adequate.

We next question whether this inflexible three-month statute of limitations substantially advances any other objective expressed by the legislature. To explain the legislative purpose, the State, in the appendix to its brief, submitted certified transcripts of the 1979 senate and house debates during which legislators introduced the limitations bills to the state legislature. In the senate transcript, Senator Barlow, referring to the highly publicized Hi-fi murders and the Carbon County motorcycle case, described the senate bill's purpose as eliminating a defense counsel's technical device of using "a series of habeas corpus actions ... to delay the eventual carrying out of the sentence of the court." The statute of limitations would prevent exorbitantly expensive delays in the execution of a sentence caused by "throwing" out known grievances one at a time over several years. The house transcript also includes discussion focused on the use of habeas petitions in notorious murder cases to improperly delay the execution of justice. Representative Sykes condemned this "charade and ... mockery of justice in

---

14. According to Justice Zimmerman, review under section 11 shifts the burden to the state to show sufficient justification for any limitation on the right to seek redress through state courts. *See Horton,* 785 P.2d at 1096 (Zimmerman, J., concurring); *Condemarin,* 775 P.2d at 368 (Zimmerman, J., concurring).

15. Although the *Horton* case discussed a statute of repose as opposed to a statute of limitations, we note that the individual interest impacted by that statute of repose was an economic interest as compared to the more highly protected liberty interest impacted by the statute at issue in this case.

bringing these last minute appeals based upon frivolous grounds."

These transcripts indicate that the legislature's goal was the deterrence of *serial* filing of habeas petitions in order to prevent undue delay in the execution of sentences. Proponents of the legislation appeared to consider the excessive delays and costs generated by *perennial* petitioners improperly delaying *capital punishment* to be "a clear social or economic evil."

However, the cases before this court demonstrate that this statute of limitations adversely impacts habeas corpus actions unrelated to the problems described by the legislature. In these cases, the petitioners are not death row inmates attempting to delay execution of their sentence, but rather prisoners currently serving their sentences who are highly motivated to expedite proceedings which might vindicate their allegedly wrongful incarceration. This distinction underscores Senator Barlow's statement indicating that the bill targeted attorneys trying to delay the execution of their client's sentence, not inmates serving sentences and challenging some aspect of their incarceration.

Thus, the three-month limitation appears to have caused the classic problematic result of "crisis" legislation against which Justice Durham warned in *Condemarin.* She described efforts to resolve a "crisis" as " 'a truly marvelous mechanism for the withdrawal or suspension of established rights.' " *Condemarin,* 775 P.2d at 362 (citations omitted). Considering that the State presented no empirical or factual data to the effect that prior to enacting this statute, non-death row inmates' petitions created a problem, much less a "clear social evil," the overly broad impact of this statute is particularly disturbing.

Adequately assessing the effectiveness of the rigid three-month limitation period in preventing the serial filing of petitions requires an awareness of certain background information. Inmates can petition for habeas corpus relief in both the state and the federal court systems.[16] In order to prevent abuse of the writ, each court system has developed separate procedures to limit the availability of habeas corpus relief. Although the federal rule was also "intended to minimize abuse of the writ of habeas corpus by limiting the right to assert stale claims and to file multiple petitions," it does not bar a petition for habeas corpus relief until the state satisfies its burden of demonstrating that it has been unfairly prejudiced by delay. 28 U.S.C.A. § 2254 Rule 9 advisory committee note at 1137 (West 1977). Federal courts do not recognize even a rebuttable presumption of prejudice until a petitioner has delayed more than five years after the judgment of conviction. *Id.* To accommodate a state's desire for finality and for dealing with claims while they are still fresh, the federal system relied on the equitable doctrine of laches which focuses on whether one party's delay disadvantaged the other party, rather than a statute of limitations. *Id.* (discussing 30A C.J.S. Equity § 112 p. 19 (1992)). Flexibility was also incorporated into the rule through the permissive language stating that " 'a petition *may* be dismissed.' " *Id.* at 1137 (quoting 28 U.S.C. § 2254 Rule 9). This language provides the federal court discretion to balance the equities of the particular situation, encourages a petitioner to act with reasonable diligence and guarantees necessary safeguards in hardship cases. *Id.* at 1137–38 (noting the suggestion of ABA Standards Relating to Post–Conviction Remedies § 2.4, commentary at 48 (Approved Draft, 1968)).

The distinction between state and federal limitations on habeas corpus actions became significant when, in 1969, Utah courts incorporated the Uniform Post–Conviction

---

**16.** *See* Utah R.Civ.P. 65B and 28 U.S.C.A. § 2255 (West 1971). The federal counterpart to Utah Code Ann. § 78–12–31.1, found in 28 U.S.C.A. § 2254 Rule 9 (West 1977) provides:
(a) Delayed petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Procedure Act into Rule 65B. *See Hurst v. Cook*, 777 P.2d 1029, 1034 (Utah 1989). The objective of the uniform act was to liberalize proceedings for state habeas corpus petitions in order to make them " 'flexible enough so that with sympathetic consideration of pleadings and methods of presenting issues, a prisoner will always be able to raise his claim in a state court and thus, ... there will be no occasion for federal habeas corpus, because a state remedy is available.' " *Id.* (quoting Annotation, *Uniform Post–Conviction Procedure Act*, 11 U.L.A. 477, 482 (1974)).

In conflict with this objective, by superimposing a state limitation substantially more rigid than its federal counterpart, the legislature forces petitioners to file petitions in federal court. This practical reality contravenes the legislative purpose of deterring numerous petitions and is repugnant to the judicial purpose expressed in *Hurst*. If, contrary to the intent of the uniform act, petitioners must raise their claims of deficient state court criminal proceedings in a federal venue, our state courts will not have the initial opportunity to address those claims and make needed corrections.

Furthermore, if the legislative purpose is to prevent delay due to sequential habeas corpus actions, a rigid three-month limitation may not be necessary. The substantive provisions in Rule 65B of the Utah Rules of Civil Procedure already forbid serial filing of state habeas corpus petitions. The current version of Rule 65B(b)(3) requires that "The petition shall set forth *all* claims that the petitioner has in relation to the legality of the commitment. Additional claims relating to the legality of the commitment may not be raised in subsequent proceedings except for *good cause shown.*"

(Emphasis added.)[17] Although these provisions of the Rules of Civil Procedure do not set a time limitation for submitting a habeas corpus petition, they directly address the problem of delay by expressly insuring that undeserving serial petitions need not be considered by the state courts.[18]

### B. Reasonableness of the Statute of Limitations

 In both of the cases before this court, petitioners contend that Utah Code Ann. § 78–12–31.1 (1992) is unconstitutional because it creates an unreasonable time constraint on their right to petition for habeas corpus relief. Currier claims that Utah's three-month statute of limitations is unreasonably short and lacks any provision which could excuse delayed filing because of circumstances beyond the petitioner's control. McClellan, too, claims that the time limitation in the statute is unreasonably short because it places an unduly harsh burden on an incarcerated petitioner and because a petitioner faces an ambiguity problem in determining when the statutory period commences.

In response to the claims made by petitioners, the State concedes that "[t]o be constitutional, a statute of limitations must allow a reasonable time for the filing of an action after a cause of action arises." *Berry ex rel. Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 672 (Utah 1985) (citations omitted). However, the State emphasizes that a statute of limitations does not, per se, offend Article I, Section 11 because the State has a legitimate interest in placing a reasonable time limit on when an action can be brought. *Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1091 (Utah 1990).

---

**17.** This requirement of submitting all claims in one petition was also included in the version of 65B in effect at the time the legislature enacted the statute of limitations in 1979.

**18.** In contrast with both the former and the current provisions in Rule 65B controlling postconviction relief, the statute of limitations enacted by the legislature does not include a provision excusing delay on the grounds of good cause. *See Hurst v. Cook*, 777 P.2d 1029, 1037 (Utah 1989). Thus, the effect of the statute of limitations is to remove flexibility and discretion from state judicial procedure, thereby diminishing the court's ability to guarantee fairness and equity in particular cases. Because "[q]uintessentially, the Writ belongs to the judicial branch of government," we find it especially problematic that the state legislature circumscribed "one of the most important of all judicial tools for the protection of individual liberty." *Id.* at 1033–34.

The State argues that the relatively short limitation period in this statute creates no presumption of unreasonableness, but rather that reasonableness depends on three factors: the nature of the action, the interests of government and the interests of the litigant. *See Davis v. State,* 443 N.W.2d 707, 710–11 (Iowa 1989). We find this suggestion consistent with Justice Durham's comment that the legislature, in the first instance, and secondly, appellate courts must "balance the weight of the governmental interest at stake against the countervailing importance of the individual rights being compromised." *Condemarin v. University Hosp.,* 775 P.2d 348, 358 (Utah 1989). We, therefore, analyze these three factors in the context of this appeal and then balance them to determine the statute's reasonableness.

First, as discussed earlier in this opinion, the writ of habeas corpus is considered so important in Utah that Article I, Section 5 of the Utah Constitution expressly prohibits its restriction unless public safety requires it. *Hurst v. Cook,* 777 P.2d 1029, 1033 (Utah 1989). The writ is an extraordinary remedy, invocable "where the requirements of law have been so disregarded that the party is substantially and effectively denied due process of law, or where some such fact is shown that it would be unconscionable not to re-examine the conviction." *Brown v. Turner,* 21 Utah 2d 96, 440 P.2d 968, 969 (1968).

Second, the State notes that the core purpose of *any* statute of limitations is to compel exercise of a right within a reasonable time to avoid stale claims, loss of evidence and faded memories. *Horton,* 785 P.2d at 1091. The State claims that in addition to this purpose, the three-month statute of limitations is necessary to promote finality, to conserve state resources and to avoid further litigation expenses.

The State also claims that preventing the challenge to a conviction "long after its occurrence" avoids what is in effect an unjustified acquittal when the State cannot re-prosecute the case because witnesses and evidence have become unavailable.

Third, the litigant's interest in petitioning for habeas corpus relief includes both minimizing the burden created by any limitation period and maximizing the benefits that exercising the right to petition can confer upon an incarcerated litigant. In both of the State's briefs for this court, the State asserted that the time limitation does not create a burden on a petitioner. The State claims (1) the acts giving rise to the claim for habeas corpus relief are readily ascertainable, (2) the tolling provision provides relief from the relatively short time period, and (3) inmates having access to free, competent legal assistance experience no delay obtaining an attorney or promptly identifying potential habeas claims.

In challenging the State's contention that the three-month limitation period is not an undue burden, Currier described difficulties facing prisoners required to meet the three-month filing deadline. He specifically questioned the State's assertion that prisoners are "in a particularly enviable position as to receiving legal assistance." Noting that prison attorneys operating under limited contracts to assist inmates in preparing their initial pleadings constitute an inmate's only access to legal assistance, he explained the potential for delay inherent in the possibility either that an inmate might miss an opportunity to meet with the contract attorney or that the contract attorney might fail to move forward promptly. He also described the time constraints created by the inmates' burden to obtain their own documentation in order to prepare the petition for writ of habeas corpus.[19]

**19.** The State presented no empirical or factual data to counter these assertions that the three-month time constraint creates an unreasonable burden on inmates. Nor did the State contest Currier's credibility or argue that the difficulties described by Currier should be considered insufficient to prove that the three-month time constraint is unreasonable. Because the State never addressed these substantive arguments, we accept the unrefuted statements as presented by Currier. *See State v. Price,* 827 P.2d 247, 249–50 (Utah App.1992) (party's failure to develop its position in an appellate brief means this court will not consider that position); Utah R.App.P. 24.

In addition to acknowledging the unrefuted burden which a three-month time limitation creates for a petitioner, we must also consider the benefits that a petitioner can receive from having a court review the propriety of his or her incarceration. The writ is considered "one of the most important of all judicial tools for the protection of individual liberty," as it "has become a procedure for assuring that one is not deprived of life or liberty in derogation of a constitutional right." *Hurst v. Cook*, 777 P.2d 1029, 1034 (Utah 1989).

### C. Balancing the Reasonableness Factors

Balancing these three reasonableness factors requires us (1) to weigh the countervailing interests of the State and of a petitioner and (2) to consider these interests relative to the nature of the writ of habeas corpus. Specifically, we must consider how all three factors are impacted by the brevity of the limitation period and by its lack of any provision for excusable delay.

Utah courts have long recognized that a decision on whether a court should grant a habeas corpus petition represents a balance between "the observance of the rights of the individual in order to protect the innocent, ... [and] the necessity of protecting rights of the public to be kept safe from crime by encouraging effective law enforcement." *Brown v. Turner*, 440 P.2d 968, 970 (Utah 1968). To implement this balance, the writ "direct[s] the inquiry to this foundational question: Was substantial justice done and has guilt been established?" *Id.* at 969–70.

Because of this concern with substantial justice, petitioners argue that the right to petition for the writ of habeas corpus outweighs any state interest in a rigid three-month limitation for the purpose of preserving finality, convenience and efficiency.

Their arguments reflect a statement by the Utah Supreme Court, declaring, "As important as finality is, it does not have a higher value than constitutional guarantees of liberty." *Hurst v. Cook*, 777 P.2d 1029, 1035 (Utah 1989). Even while legitimizing the general concept of time limitation, the *Horton* court stated, "The notion that rights of action should be terminated because of the difficulty of proof which accompanies the passage of time is not a valid justification" for a statute which prematurely cuts off a plaintiff's right of action. *Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1094–95 (Utah 1989). That court noted that "[a]lthough the passage of time increases the difficulty of providing reliable evidence, the difficulties of proof fall much more heavily upon the plaintiffs, who have the burden of establishing a prima facie case ... to survive a motion for summary judgment or directed verdict." *Id.* at 1095.

In weighing the interests of the litigants on either side of a habeas corpus action, we note that a petitioner trying to ascertain his or her rights and to file all reasonably known claims in the initial petition[20] must make these complex legal decisions with limited knowledge of the law, limited access to legal assistance and often no access to a law library. As Justice Murphy of the United States Supreme Court said,

> Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession.

*Price v. Johnston*, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948). Furthermore, the decisions made by these petitioners impact their personal liberty interests.[21] When such an interest is at

---

**20.** The penalty for failure to file all reasonably known complaints is that they may be considered waived. *See Hurst*, 777 P.2d at 1037.

**21.** In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401 (1977), a case quoted in the *Berry* decision, the Supreme Court stated that, "While the con-

tours of this historic liberty interest ... have not been defined precisely, they always have been thought to encompass freedom from bodily restraint and punishment.... It is fundamental that the state cannot hold and physically punish an individual except in accordance with

stake, an individual has "a strong interest in procedural safeguards that minimize the risk of wrongful punishment and provide for the resolution of disputed questions of justification." *Ingraham v. Wright*, 430 U.S. 651, 676, 97 S.Ct. 1401, 1415 (1977).

In addition to comparing the interests of the two parties in the litigation, we also note that the effect of this statute is to curtail the right to a writ of habeas corpus that this state has declared to be "a constitutional fixture in American law." *Hurst v. Cook*, 777 P.2d 1029, 1033 (Utah 1989). The statute superimposes the legal defense of a statute of limitations on an equitable doctrine, the right to petition for a writ of habeas corpus. *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963). Because Utah's statute of limitations is a legal rather than an equitable defense, *see* Utah Code Ann. § 78–12–1 (1992), the State may interpose this legal defense regardless of the equities of the particular situation. *Passey v. Budge*, 85 Utah 37, 38 P.2d 712, 716–17 (1934). The inherent lack of flexibility in a statute of limitations combined with the lack of any provision for excusable delay contributes to our conclusion that the nature of the habeas corpus action received insufficient consideration from the legislature when selecting the inflexible three-month limitation period.

Petitioner Currier has questioned the legitimacy of any statute of limitations barring a petition for habeas corpus which does not excuse the tardy filing of a writ when good cause is shown.[22] While no Utah decision has previously addressed this particular claim, the Utah Supreme Court did discuss the need to excuse unavoidable delay when it interpreted Utah Rule of Civil Procedure 65B(i)(4) requiring all claims for post-conviction relief to be raised in an initial petition "except for good cause shown therein." *See Hurst*, 777 P.2d at 1037.[23] In this context, the court decided that "good cause" justifying the filing of a successive petition included situations involving "a claim overlooked in good faith with no intent to delay or abuse the writ." *Id.* We find this interpretation of the rules of civil procedure inconsistent with the statutory bar of an original petition delayed for the same reasons.[24] Therefore, having considered the interests of the State and the petitioners in light of the nature of the right impacted by this statute of limitations, we conclude that the inflexible three-month limitation on the right to petition for a writ of habeas corpus is unreasonable.

In summary, although we recognize a relevant distinction between statutes of limitations and statutes of repose, we do not believe that this distinction should immunize statutes of limitations from section 11 analysis. On the other hand, while the

due process of law." *Id.* at 673–74, 97 S.Ct. at 1413–14 (citation omitted).

**22.** He cites cases from other states in which the right to present facts demonstrating excusable delay is included in a statute or evident in appellate review. *See Davis v. State*, 443 N.W.2d 707, 710 (Iowa 1989); *Passainisi v. Director, Nevada Dept. of Prisons*, 105 Nev. 63, 769 P.2d 72, 74 (1989); *Albert v. State*, 466 P.2d 826, 827 (Wyo.1970). In these states a petitioner has the right or the opportunity to raise the issue of whether the failure to comply with the statute of limitations was due to the petitioner's own neglect or due to circumstances beyond his or her control. By contrast, in *People v. Germany*, 674 P.2d 345, 353 (Colo.1983), the state's statute of limitations was determined to violate due process because it failed to provide a defendant any opportunity to show justifiable excuse.

**23.** Although Utah courts "will construe statutes to 'effectuate the legislative intent' while avoiding interpretations that conflict with relevant constitutional mandates," we are constrained to interpret the language actually used as "'the court has no power to rewrite a statute to make it conform to an intention not expressed.'" *In re Criminal Investigation, 7th Dist. Ct.*, 754 P.2d 633, 640 (Utah 1988) (citation omitted). These guidelines may limit this court's ability to modify or soften the harsh effects of the rigid and short statutory limitations period through judicial gloss in lieu of declaring the statute unconstitutional.

**24.** The State attempted to counter Currier's argument that delay due to uncontrollable circumstances should toll the statute of limitations by claiming that Utah Code Ann. § 78–12–31.1 (1992) incorporates provision for excusable delay by barring only actions which a petitioner should have been aware of "through the exercise of reasonable diligence." However, we find this response unrelated to Currier's claim that even after a petitioner is aware of a claim, three-months is an insufficient time in which to prepare and file a habeas petition under the circumstances in which inmates must work.

"degree of impairment" criteria subjects statutes of repose to particularistic evaluation almost automatically, that criteria may have no impact on appellate review of less invasive statutes of limitations. Furthermore, the second factor focusing on "the nature of the right impaired" only has potential to modify the review of limitations on important, if not constitutionally based personal rights. Thus, we suspect that the analysis in this opinion will rarely trigger heightened scrutiny of statutes of limitations, preserving the legislative prerogative in most instances.

Despite the narrow focus of our holding in this case, we find no legitimate governmental interest in keeping a person in prison who may actually have done nothing more than miss the deadline created by Utah Code Ann. § 78–12–31.1 (1992). Furthermore, having balanced the petitioners' interest in habeas corpus relief, and the State's interest in limiting the filing period in light of the nature of the writ, we find that the inflexible three-month filing period created by this statute of limitations is unreasonable. We therefore declare Utah Code Ann. § 78–12–31.1 unconstitutional.

## CONCLUSION

Because Utah Code Ann. § 78–12–31.1 (1992) creates a significant impairment on the constitutionally protected right of an individual to petition for habeas corpus relief, we evaluate the constitutionality of the statute under a heightened scrutiny standard. Having thereby concluded that the statute does not achieve any legitimate statutory objective by a reasonable means, we find that this statute denies a petitioner a civil remedy in state court by due course of law and is unconstitutional under Article I, Section 11 of the Utah Constitution. We therefore remand both of these cases to the district courts for consideration of their respective substantive claims.

GARFF, J., concurs.

ORME, Judge (concurring in the result):

I agree with my colleagues that the dismissal of both petitions at issue in these appeals must be reversed and the cases remanded for consideration on the merits. I find it unnecessary, however, to address the constitutionality of the applicable statute of limitation. As I view the statutory scheme, and in particular the question of when petitioners' causes of action accrued, these petitions were brought well within the limitation period prescribed by the statute. Such being the case, we need not decide the constitutionality of the statute of limitation.

### A. Alternative Interpretation

The period within which a petition for writ of habeas corpus must be filed is governed by two related statutory provisions.[1] The first, applicable to statutes of limitation generally, provides as follows:

> Civil actions may be commenced only within the periods prescribed in this chapter, *after the cause of action has accrued,* except in specific cases where a different limitation is prescribed by statute.

Utah Code Ann. § 78–12–1 (1992) (emphasis added). The specific limitation period applicable to habeas corpus proceedings is as follows:

> Within three months:
>
> For relief pursuant to a writ of habeas corpus. This limitation shall apply not only as to grounds known to petitioner but also to grounds which in the exercise of reasonable diligence should have been

---

1. In *Hurst v. Cook,* 777 P.2d 1029 (Utah 1989), the Utah Supreme Court noted that "[a]lthough a post-conviction relief remedy and the writ of habeas corpus have sometimes been thought to be separate procedures, the writ of habeas corpus has, over the years, absorbed the post-conviction relief remedy to form a single constitutional remedy." *Id.* at 1033. Rule 65B of the Utah Rules of Civil Procedure governs procedures for extraordinary relief, which include those for post-conviction relief. The most recent version of Rule 65B explicitly eliminated the concept of the "writ" from this rule. That term has been replaced with other contextually appropriate terms. *See* Utah R.Civ.P. 65B(a) (amended 1991) and the advisory committee note.

known by petitioner or counsel for petitioner.

*Id.* § 78–12–31.1.

The State argues that section 78–12–31.1 required petitioners to file their habeas corpus petitions within three months of particular events—the affidavit of recantation in Currier's case; denial of the motion for new trial in McClellan's case. Because petitioners filed their petitions more than three months after these occurrences, the State asserts that their claims were barred by the three-month statute of limitation.

While the State's interpretation is a plausible one, an alternative interpretation of the statutory scheme is also possible. Under the alternative view, the petitions for writs of habeas corpus were timely filed because illegal imprisonment is an ongoing violation of constitutional rights, from which it follows that a new cause of action accrues with each day of illegal confinement. Under this alternative interpretation, which recognizes the gravamen of a habeas corpus action to be illegal confinement rather than the particular occurrence which makes the confinement illegal, these petitions were timely because they were filed *while* these petitioners were allegedly confined unlawfully, and thus well within three months of such confinement.

## B. Ambiguity

"A statute is ambiguous if it can be understood by reasonably well-informed persons to have different meanings." *Tanner v. Phoenix Ins. Co.*, 799 P.2d 231, 233 (Utah App.1990). Section 78–12–31.1 is am-

biguous, as McClellan contends, because the statute provides no guidance as to when the three-month statutory period begins, i.e., as to when a habeas corpus cause of action, as that term is used in section 78–12–1, accrues.[2] Although section 78–12–31.1 applies to "grounds known to petitioner" as well as to grounds which "should have been known by petitioner," the section makes no specific reference to when the cause of action accrues. Even assuming "grounds" refers to the underlying decision or other action which resulted in the allegedly unlawful confinement rather than to the condition of being unlawfully confined, the general rule is that "a cause of action accrues upon the happening of the *last* event necessary to complete the cause of action." *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983) (emphasis added). Thus, the statute does not itself resolve when a habeas corpus cause of action accrues,[3] although it seems unlikely that an unlawful action which does not culminate in confinement or other restraint of liberty is actionable in a habeas corpus proceeding, suggesting that it is unlawful confinement or restraint that is the "last event necessary to complete the cause of action."

While we will not ignore the plain meaning of a statute, Utah law directs us to "liberally construe[ ] [statutes] with a view to effect the objects of the statutes and to promote justice." Utah Code Ann. § 68–3–2 (1986). *See Provo City Corp. v. Willden*, 768 P.2d 455, 458 (Utah 1989). Moreover, with regard to the three-month limitation

**2.** If the Legislature wanted to specify the time the statutory period commences, it could easily have done so. *See, e.g.,* Utah Code Ann. § 35–2–48 (1988) (cause of action for occupational disease disability compensation arose when "employee first suffered incapacity from the occupational disease" and knew or should have known that condition was caused by employment) (repealed 1991). *See also* Ill.Rev.Stat. 1965, ch. 38, § 122–1 (petition for post-conviction challenges based on denial of constitutional rights must be commenced within 20 years of "rendition of final judgment").

**3.** Determining when a cause of action accrues, so as to trigger a statute of limitation, is made more difficult in situations where the statute

itself is ambiguous. *See, e.g., Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990) (indemnity action does not arise when underlying damage occurs, but from time of payment of claim or payment of judgment or settlement); *Lipscomb v. Chilton*, 793 P.2d 380–81 (Utah 1990) (statute of limitation for breach of warranty action began to run when sellers did not respond to purchasers' demand, not when buyers made demand, nor when roof leaks were first discovered); *Holy Family Catholic Congregation v. Stubenrauch Assoc.*, 136 Wis.2d 515, 402 N.W.2d 382, 385 (App.1987) (when time of accrual is ambiguous, court will look beyond words of statute to determine when limitation period began).

for filing habeas corpus petitions, the Utah Supreme Court has directed that "any ambiguity that may exist ... should be resolved in favor of a criminal defendant." *Smith v. Cook*, 803 P.2d 788, 791 (Utah 1990).

### C. Legislative History

The legislative history of section 78–12–31.1 provides insight into the intent behind the three-month limitation period. As noted in the main opinion, the debates in the Utah House and Senate exhibited the single-minded intention by legislators to control repeated, frivolous appeals occurring in capital cases. Those who spoke during the debate never expressed an intention to preclude prisoners with meritorious habeas corpus claims from asserting those claims in the courts of this state.[4] The reason seems clear. The legislators were focused upon death row inmates anxious to postpone their rendezvous with the executioner. *It is only such inmates who stand to benefit from delaying the filing of a habeas corpus petition.* While further confinement compares favorably with execution, non-capital prisoners have no incentive to put off habeas corpus filings, which would only prolong the confinement they believe is unlawful when the alternative is *freedom* rather than execution.

In its understandable effort to eliminate frivolous claims brought at the eleventh hour by capital felons, the Legislature apparently failed to explicitly consider non-capital cases, including those in which convicts fail to bring an immediate action for reasons beyond their control.[5] The short limitation period, if interpreted as the State argues, would provide little room for error by inexperienced prisoners who in good faith attempt to challenge the illegality of their confinement on valid constitutional grounds. Indeed, the instant cases present circumstances where each petitioner claims he attempted to seek legal assistance in a timely manner, but faced a number of obstacles that made earlier completion of his petition difficult, if not impossible. Section 78–12–31.1, as interpreted by the State, would bar these claims for relief regardless of the reason for the delay in filing. While the Legislature did not explicitly disapprove of such a result, "the draconian sanction of barring a cause of action should not be imposed without clear legislative intent of such consequences." *Gramlich v. Munsey*, 838 P.2d 1131, 1133 (Utah 1992).

### D. Avoiding Unjust Results

In addition to other methods for resolving ambiguity in the statutory scheme, we ought to "look to the effect each plausible meaning of statutory language will have in practical application." *Tanner v. Phoenix Ins. Co.*, 799 P.2d 231, 233 (Utah App.1990). We must therefore be sensitive to the unacceptable consequences arising out of the State's interpretation of the statutory scheme. In doing so, we merely heed the Legislature's directive to interpret statutes to "promote justice," Utah Code Ann. § 68–3–2 (1986), and the Utah Supreme Court's directive to resolve any ambiguity in section 78–12–31.1 in favor of the crimi-

---

**4.** Increasingly, federal courts have become overburdened with a disproportionate number of habeas corpus petitions by state prisoners. United States Department of Justice, *Report to the Attorney General: Federal Habeas Corpus Review of State Judgments* 33 (1988). The United States Justice Department proposed significant reform of federal habeas corpus review of state judgments. These reforms included a proposal to confine "federal habeas corpus review to cases where a meaningful process for considering a petitioner's federal claims was denied in the state courts." *Id.* at 55. The basic idea of this reform "would be to treat federal habeas corpus as a backstop measure, which would only come into play if a state judicial system had failed to provide some meaningful opportunity for raising a federal claim and having it

decided." *Id.* at 59. Limiting state prisoners to an unreasonably short period for filing a habeas corpus petition tends not to promote a meaningful opportunity to obtain state review. Such a limitation therefore undermines innovative attempts at federal habeas corpus reform and may unintentionally shift the review burden from the state judiciary to the federal courts. Moving habeas corpus review of state matters from our own courts to the federal courts seems an unlikely objective of our Legislature.

**5.** Rule 65B of the Utah Rules of Civil Procedure provides a method for dismissing frivolous petitions before they are fully litigated at public expense. *See* Utah R.Civ.P. 65B(b)(7), (c)(4).

nal defendant. *Smith v. Cook,* 803 P.2d 788, 791 (Utah 1990).

The State's interpretation, which in many cases would leave unremediable the continued wrongful confinement of a prisoner, could lead to egregious miscarriages of justice. To take an extreme example, suppose a judge orders a juror jailed for returning a not-guilty verdict.[6] Unaware of his legal options or despondent about his state of affairs, the prisoner takes no action for three months. In the State's view, upon expiration of the three-month limitation period, the prisoner would have no choice but to remain in prison indefinitely because a reasonable person would have known at the moment he was hauled off to jail that the committing judge's action was illegal. After the elapse of three months, the juror-prisoner would simply have no recourse but to languish in jail at the judge's whim, even though the State has no legitimate interest in confining someone illegally.

The State's interpretation of when the three-month limitation period begins would bar not only the instant petitions, but essentially all habeas corpus petitions premised on claims of ineffective assistance of counsel. This is so because when the dereliction occurred, it may be said that defendant—or at least defendant's counsel—"in the exercise of reasonable diligence should have ... known" of trial counsel's dereliction. It would then seem that in the case of ineffective assistance of counsel at trial, any resulting habeas corpus petition would have to be brought within three months of trial. Yet it has been consistently assumed that habeas corpus relief for ineffective assistance at trial is available long after trial.

For example, in *Fernandez v. Cook,* 783 P.2d 547 (Utah 1989), the Utah Supreme Court held that an ineffective assistance of counsel claim may be raised for the first time in a habeas corpus proceeding when the same allegedly incompetent attorney represented petitioner during the trial and the direct appeal.[7] *Id.* at 549. Accordingly, the Court permitted the petitioner to pursue his habeas corpus petition, filed five months after the trial court imposed its final sentence. *Id.* at 548, 550. The remand ordered by this state's Supreme Court would be wholly illusory if the Court expected the three-month statute of limitation to bar the petitioner's cause of action.

In a number of other cases, the appellate courts have spoken of the availability of the habeas corpus remedy for the alleged ineffective assistance of counsel, a rather hollow characterization if the State's view controlled and essentially all of the claims were, as a practical matter, time-barred. *See, e.g., State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991) (defendant would typically be "require[d] ... to present the claim of ineffective assistance of trial or appellate counsel in a postconviction proceeding in the trial court"); *State v. Garrett,* 849 P.2d 578, 580 (Utah App.1993) ("[o]rdinarily, [ineffective assistance of counsel claim] may only be raised through a collateral attack in habeas corpus proceedings"). Prisoners, who typically are not trained in the law, are unlikely to have immediate reason to suspect that their representation was inadequate. Upon eventual discovery of that possibility, they have no incentive to refrain from promptly asserting their claim.

---

**6.** As farfetched as such a scenario appears, it actually happened a while back. *Bushell's Case,* Vaughan 135, 124 Eng.Rep. 1006 (1670). *See Preiser v. Rodriguez,* 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.2d 439 (1973).

**7.** A claim of ineffective assistance of counsel, by its very nature, is likely to be barred by a three-month limitation period under the State's interpretation of when the cause of action accrues. The crux of such a claim is that a reasonable attorney would have known the contested behavior was inept and that, due to counsel's inep-

titude, the resulting conviction was wrong. *See State v. Frame,* 723 P.2d 401, 405 (Utah 1986) (claimant must "demonstrate that counsel's representation falls below an objective standard of reasonableness"). Inevitably, a habeas corpus petition will not be forthcoming from a prisoner who maintains the same ineffective attorney for three months after his conviction because the limitation period begins once "grounds which in the exercise of *reasonable* diligence *should* have been known by ... counsel for petitioner." Utah Code Ann. § 78–12–31.1 (1992) (emphasis added).

The State nonetheless argues that the statute is necessary to prevent petitioners from sitting on their rights. While this policy underlies statutes of limitation generally, and applies to death row inmates who wish to postpone execution, no rationale can explain a prisoner's desire to bide his time, unlawfully incarcerated, for the purpose of bringing a habeas corpus petition some time in the distant future. Petitioner, after all, bears the burden of proving his claim and, in addition to the high price of prolonged incarceration, risks with deliberate delay the loss of evidence, witnesses, and recollection necessary to prove his case. And with respect to concerns about staleness should a retrial become necessary as a result of a successful petition, this point must be kept in mind:

> While the governmental interest in eliminating stale claims is a legitimate one, it must be remembered that any increasing staleness is offset by a decreasing state interest in punishment: "The farther in time a postconviction proceeding is from the original conviction, the more difficult will be retrial but, equally, the greater the portion of the original sentence that will already have been completed."

*People v. Germany,* 674 P.2d 345, 350 n. 5 (Colo.1983) (quoting ABA, *Standards For Criminal Justice: Postconviction Remedies,* Commentary to Standard 22–2.4 at 22.27 (2d ed. 1982)).

### E. Best Interpretation

Accordingly, I favor the alternative interpretation of the statutory scheme. Such a reading is the "liberal constru[ction]" which better "promote[s] justice"; it resolves "ambiguity ... in favor of a criminal defendant"; it is not inconsistent with the legislative history called to our attention; and it avoids unacceptable results in practice. Moreover, adopting the alternative interpretation avoids the necessity, at least in this case, of addressing the statute's constitutionality. *See Lounsbury v. Capel,* 836 P.2d 188, 196 (Utah App.1992) ("[W]e construe the statute in a manner which will avoid potential constitutional pitfalls.") But does the interpretation I favor have a firm underpinning in jurisprudence?

I believe it does, for two basic reasons. First, the alternative interpretation is more consistent with the paramount role that "the Great Writ" plays in our legal system. Second, this interpretation conforms with the theory of a "continuing wrong," which has long been recognized in analogous circumstances.

### 1. The Great Writ

The Writ of Habeas Corpus occupies an essential niche in the Anglo–American common law and is the only common law writ that received explicit protection in the United States and Utah Constitutions. *See* U.S. Const. art. I, § 9, cl. 2; Utah Const. art. I, § 5. The availability of the Writ provides "one of the most important of all judicial tools for the protection of individual liberty." *Hurst v. Cook,* 777 P.2d 1029, 1034 (Utah 1989). While the scope of the Writ has evolved to encompass a variety of constitutionally unacceptable conduct, "in each case [the petitioner's] grievance is that he is being unlawfully subjected to physical restraint." *Preiser v. Rodriguez,* 411 U.S. 475, 486, 93 S.Ct. 1827, 1834 (1973). Accordingly, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Id.,* 411 U.S. at 483, 93 S.Ct. at 1833. In addition, the Montana Supreme Court has rightfully noted that

> [t]he central function of the courts is the achievement of justice. However, like all endeavors of man, the search for justice is not without occasional flaws. From the time of the Magna [Carta], the Great Writ of Habeas Corpus has been liberally employed as a means of guaranteeing that this judicial goal be accomplished and that a miscarriage of justice will be remedied. *See* Blackstone Comm. at 129 et seq. For at its heart, the writ represents an acknowledgement of the principle that the rights of freedom of the individual are worthy of protection.

*State v. Perry,* 758 P.2d 268, 273 (Mont. 1988).

In order to arrive at just results where illegal imprisonment or other restraint of liberty is challenged in habeas corpus proceedings, there must be a delicate balancing of two competing goals: finality and liberty. In this respect I agree with Justice Stewart's analysis:

> The general judicial policy favoring the finality of judgments cannot ... always prevail against an attack by a writ of habeas corpus. As important as finality is, it does not have a higher value than constitutional guarantees of liberty.

*Hurst*, 777 P.2d at 1035. Although Justice Stewart directed his reasoning to a holding that "neither collateral estoppel nor issue preclusion is an absolute defense in a habeas case," *id.* at 1036, his reasoning is equally applicable in the statute of limitations context.[8] The realization that the State violates the constitutional rights of a person each day he or she is illegally confined comports with the conceptual underpinning of the Great Writ. Consequently, such an interpretation best promotes just results in cases where a prisoner's claims of illegal confinement or restraint arguably have merit.

### 2. Continuing Wrong

Generally, "a cause of action accrues upon the happening of the last event necessary to complete the cause of action." *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983). In a typical case, the application of this rule is reasonably straightforward because a single event occurs, such as a punch in the nose or trespass upon one's property, which completes a cause of action. Courts, however, have adapted to rarer instances where a defendant's wrongful actions occur over a period of time. In such cases, "where a continuous chain of events or course of conduct is involved the cause of action accrues at the time of the final act in that series of events or course of conduct." *Barbaccia v. County of Santa Clara*, 451 F.Supp. 260, 266 (N.D.Cal.1978). The focus of an inquiry into whether plaintiff's allegations are governed by the continuing wrong theory is on the defendant's wrongful activities. *New Port Largo, Inc. v. Monroe County*, 706 F.Supp. 1507, 1516 (S.D.Fla.1988).

Courts have applied the "continuing wrong" theory in a variety of contexts, particularly where civil rights are at stake. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982) (under continuing wrong theory, so long as one discriminatory act falls within limitation period, even acts occurring outside limitation period are not time barred);[9] *Lee v. Case–Hoyt Corp.*, 779 F.Supp. 717, 720–22 (W.D.N.Y. 1991) (although alleged wage discrimination began when plaintiff received lower pay at time of hire, each paycheck constituted an ongoing wrong for statute of limitations purpose); *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 157 Cal.Rptr. 392, 400, 598 P.2d 45, 53 (1979) (where one continues to commit wrongful acts in furtherance of civil conspiracy, limitation period does not begin until last overt act occurs); *Russell v. McMillen*, 685 P.2d 255,

---

**8.** In *Hurst*, the trial court ruled that petitioner's claim was barred by Utah Rule of Civil Procedure 65B(i)(4) because the issues raised in a second habeas petition should have been or were raised in the first petition. *Hurst*, 777 P.2d at 1032. At that time, Rule 65B(i)(4) permitted a plaintiff to raise constitutional claims in a second petition "for good cause shown." *Cf.* Utah R.Civ.P. 65B(b)(3) (amended 1991) ("[a]dditional claims relating to the legality of the commitment may not be raised in subsequent proceedings except for good cause shown"). The Utah Supreme Court held that, among other reasons, "[a] showing of good cause that justifies the filing of a successive claim may be established by showing ... the illegality of a sentence." *Id.* at 1037. Unlike both the previous Rule 65B(i)(4) and the current Rule

65B(b)(3), Utah Code Ann. § 78–12–31.1 contains no exception for good cause delays in filing a petition for habeas corpus. The statute, if interpreted as urged by the State, would place a higher value on the judicial policy of finality than on constitutionally protected liberties. Such an interpretation would be inconsistent with the Utah Supreme Court's well-reasoned analysis in *Hurst*.

**9.** In applying the continuing wrong doctrine to this civil rights case, the United States Supreme Court stated that "[w]here the challenged violation is a continuing one, the staleness concern disappears." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380, 102 S.Ct. 1114, 1125 (1982).

258 (Colo.App.1984) (in determining when statute of limitation runs, "each separate publication constitutes a separate and distinct claim for libel"); *Graveley Ranch v. Scherping*, 240 Mont. 20, 782 P.2d 371, 373 (1989) (in nuisance action where leaking lead batteries harmed neighbor's cattle, continuing nature of injury tolled statute of limitations); *Shors v. Branch*, 221 Mont. 390, 720 P.2d 239, 243–44 (1986) (each day a gate obstructed free use of their easement, plaintiffs obtained a new cause of action).

Assuming that petitioners' substantive claims are factually true and legally cognizable, their daily confinement is a continuing wrong because it is based on convictions which were obtained in violation of their rights under the Sixth Amendment. Because these petitioners allege that the State is unlawfully detaining them on an ongoing basis, application of the continuing wrong doctrine here is consistent with its application in a variety of other situations where justice so dictates. Because the last act necessary to complete a habeas corpus cause of action is illegal confinement and illegal confinement is a continuing wrong, the three-month statute of limitation did not commence at the time a certain affidavit was filed or a particular motion denied, but starts anew each day petitioner is illegally confined.

### F. Conclusion

Because the petitioners' actions were timely filed under the statute of limitations as properly construed, the district court erred in dismissing the petitions on the theory that the statute of limitations barred them. It is on that basis—and, therefore, without seeing the need to address the statute's constitutionality—that I join my colleagues in remanding the petitions for consideration on the merits.